# CIVIL COVER SHEET

JS-44
(Rev. 01/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Ismail Alkhemisi, Hasan Balgaid and Omar Deghayes | George W. Bush, Donald Rumsfeld, Army Brig. Gen. Jay Hood, Army Col. Mike Bumgarner, |

**(b) COUNTY RESIDENCE OF FIRST LISTED PLAINTIFF** Lybia
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  United States
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
C. Clark Hodgson, Jr., Esquire
Andrew J. DeFalco, Esquire
Daniel M. Hanifin, Esquire
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| | | | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal if fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act) |

L 407498 v.1

| ☑ **G.** *Habeus Corpus/ 2255*<br>☑ **530  Habeus Corpus-General**<br>☐ **510  Motion/Vacate Sentence** | ☐ **H.** *Employment Discrimination*<br>☐ **442  Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)**<br><br>**\*(If pro se, select this deck)\*** | ☐ **I.** *FOIA/PRIVACY ACT*<br>☐ **895  Freedom of Information Act**<br>☐ **890  Other Statutory Actions (if Privacy Act)**<br><br><br>**\*(If pro se, select this deck)\*** | ☐ **J.** *Student Loan*<br><br>☐ **152  Recovery of Defaulted Student Loans (excluding veterans)** |
|---|---|---|---|
| ☐ **K.** *Labor/ERISA (non-employment)*<br>☐ **710  Fair Labor Standards Act**<br>☐ **720  Labor/Mgmt. Relations**<br>☐ **730  Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740  Labor Railway Act**<br>☐ **790  Other Labor Relations**<br>☐ **791  Empl Ret. Inc. Security Act** | ☐ **L.** *Other Civil Rights (non-employment)*<br>☐ **441  Voting (if not Voting Rights Act)**<br>☐ **443  Housing/Accommodations**<br>☐ **444  Welfare**<br>☐ **445  American w/Disabilities- Other** | ☐ **M.** *Contract*<br>☐ **110  Insurance**<br>☐ **120  Marine**<br>☐ **130  Miller Act**<br>☐ **140  Negotiable Instrument**<br>☐ **150  Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153  Recovery of Overpayment of Veteran's Benefits**<br>☐ **160  Stockholder's Suits**<br>☐ **190  Other Contracts**<br>☐ **195  Contract Product Liability**<br>☐ **196  Franchise** | ☐ **N.** *Three-Judge Court*<br>☐ **441  Civil Rights-Voting (if Voting Rights Act** |

**V. ORIGIN**
☑ 1 **Original Proceeding**    ☐ 2 **Removed from State Court**    ☐ 3 **Remanded from Appellate Court**    ☐ 4 **Reinstated or Reopened**    ☐ 5 **Transferred from another district (specify)**    ☐ **Multi district Litigation**    ☐ 7 **Appeal to District Judge from Mag. Judge**

**V. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC §§2241, 2242 Petition for Writ of Habeas Corpus

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS<br>☐   ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** ☐ YES   ☐ NO |
|---|---|---|---|
| **VIII.   RELATED CASE(S) IF ANY** | (See instruction)   ☐ YES   ☑ NO | | If yes, please complete related case form. |

**DATE: October 5, 2005**    **SIGNATURE OF ATTORNEY OF RECORD**    *C. Clark Hodgson, Jr.*

C. CLARK HODGSON, JR.

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

   I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

   III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II.**

   IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the underlined primary cause of action found in your complaint. You may select only one category. You **must** also select one corresponding nature of suit found under the category of case.

   VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ISMAIL ALKHEMISI<br>Guantánamo Bay Naval Station<br>Guantánamo Bay, Cuba; | ) ) ) ) | |
| HASAN BALGAID<br>Guantánamo Bay Naval Station<br>Guantánamo Bay, Cuba | ) ) ) ) | |
| OMAR DEGHAYES<br>as Next Friend of Ismail Alkhemisi and Hasan<br>Balgaid; | ) ) ) ) | |
| *Petitioners/Plaintiffs,* | ) ) | |
| v. | ) ) | PETITION FOR WRIT<br>OF HABEAS CORPUS |
| GEORGE W. BUSH,<br>President of the United States<br>The White House<br>1600 Pennsylvania Ave., N.W.<br>Washington, D.C. 20500; | ) ) ) ) ) ) | No. _____ |
| DONALD RUMSFELD,<br>Secretary, United States<br>Department of Defense<br>1000 Defense Pentagon<br>Washington, D.C. 20301-1000; | ) ) ) ) ) ) | |
| ARMY BRIG. GEN. JAY HOOD,<br>Commander, Joint Task Force - GTMO<br>JTF-GTMO<br>APO AE 09360; and | ) ) ) ) ) | |
| ARMY COL. MIKE BUMGARNER,<br>Commander, Joint Detention<br>Operations Group - JTF-GTMO,<br>JTF-GTMO<br>APO AE 09360, | ) ) ) ) ) ) | |
| *Respondents/Defendants.* | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioners Ismail Alkhemisi and Hasan Balgaid, seek the Great Writ. Citizens of Libya, they act on their own behalf and through their Next Friend, Omar Deghayes. They are civilians wrongly classified as an "enemy combatant" by the President of the United States, and, upon information and belief, are being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which they might challenge their detention. Petitioner is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release the Petitioners or to establish in this Court a lawful basis for Petitioner Alkhemisi's and Petitioner Balgaid's detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioners at Guantánamo.

# I.
## JURISDICTION

1.      Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242.

Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651,

2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth

Amendments to, the United States Constitution.  Because they seek declaratory relief,

Petitioners also rely on Fed. R. Civ. P. 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus,

and to entertain the Petition filed by Omar Deghayes, the Next Friend of Petitioners

Alkhemisi and Belgaid, under 28 U.S.C. § 2242.  This Court is further empowered to

declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and

to effectuate and enforce declaratory relief by all necessary and proper means by 28

U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction,

and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. §

1651.

# II.
## PARTIES

3.      Petitioner Alkhemisi is a Libyian citizen who is presently incarcerated at Guantánamo

and held in Respondents' unlawful custody and control.  *See* Affidavit of ("Deghayes

Aff.") as Exhibit "A."

4.      Petitioner Belgaid is a Libyian citizen who is presently incarcerated at Guantánamo and

held in Respondents' unlawful custody and control.  *See* Exhibit "A."

5.      Petitioner Deghayes is Petitioner Alkhemisi's  and Petitioner Belgaid's friend . *Id.*  He is

a Libyian citizen. *Id.*  Because his friends have been denied access to legal counsel and to

the courts of the United States, Deghayes acts as their Next Friend. *Id.*

3

6.      Respondent Donald Rumsfeld is the Secretary of the United States Department of

Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws

and usages war or, alternatively pursuant to the Executive Order, Respondent

Rumsfeld has been charged with the responsibility of maintaining the custody and control

of Petitioners Alkhemisi and Belgaid. He is sued in his official capacity.

7.      Respondent George W. Bush is the President of the United States and Commander-in-

Chief of the United States Military. Petitioners Alkhemisi and Belgaid are being detained

pursuant to President Bush's authority as Commander-in-Chief, under the laws and

usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001,

Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism,

66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is

responsible for Petitioners Alkhemisi's and Belgaid's unlawful detention and is sued in

his official capacity.

8.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the

task force running the detention operation at Guantánamo Bay. He has supervisory

responsibility for Petitioners Alkhemisi and Belgaid and is sued in his official capacity.

9.      Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention

Operations Group and the JTF-GTMO detention camps, including the U.S. facility where

Petitioners Alkhemisi and Belgaid are presently held. He is the immediate custodian

responsible for Petitioners Alkhemisi's and Belgaid's detention and is sued in his official

capacity.

10.     Respondents are directly responsible for any activities undertaken by or under the

supervision of any agents or employees acting on their behalf, or of agents or employees

4

of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

## III.
## STATEMENT OF FACTS

11.    Upon information and belief, Petitioners Alkhemisi and Belgaid are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the government in any civil or military proceeding.

12.    Upon information and belief, Petitioners Alkhemisi and Belgaid are not, nor have they ever been, "enemy combatants" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld,* 542 U.S. ____, 124 S. Ct. 2633, 2639 (plurality) (2004).

13.    Petitioners Alkhemisi and Belgaid seek to enforce their rights to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that they are either "enemy combatants" as defined by the United States Supreme Court in *Hamdi* or "enemy combatants" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

14.    To Omar Deghayes's knowledge, Petitioners Alkhemisi and Belgaid have never been engaged in any combat against the United States and was never part of any forces hostile to the United States.

15.    Upon information and belief, Petitioners did not cause or attempt to cause any harm to American personnel or property prior to his detention. They remain incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

16.    Petitioners Alkhemisi and Belgaid request that the United States provide them with access to their family and legal counsel. To date, their only outside contact has been through letters to their families.

17.    Petitioners Alkhemisi and Belgaid have not been afforded any procedures that would satisfy their rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

18.    Upon information and belief, Petitioners Alkhemisi and Belgaid desire to pursue in United States courts every available legal challenge to the lawfulness of their detention.

**The Joint Resolution**

19.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

20.    As Petitioners Alkhemisi and Balgaid did not participate in the armed conflict at any

point in time, they are not properly detained pursuant to President Bush's authority as

Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

21.    Upon information and belief, Petitioners Alkhemisi and Belgaid are not, and have never

been, members of Al Qaeda or any other terrorist group.  Prior to their detention, he did

not commit any violent act against any American person or espouse any violent act

against any American person or property.  They had no involvement, direct or indirect, in

the terrorist attacks on the United States on September 11, 2001, or any act of

international terrorism attributed by the United States to Al Qaeda or any other terrorist

group.  They are not properly subject to the detention order issued by President Bush.

**The Executive Order**

22.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to

believe":

i.      is or was a member of the organization known as al Qaeda;

ii.     has engaged in, aided or abetted, or conspired to commit, acts of international

terrorism, or acts in preparation therefore, that have caused, threaten to cause, or

have as their aim to cause, injury to or adverse effects on the United States, its

citizens, national security, foreign policy, or economy; or

iii.    has knowingly harbored one or more individuals described in subparagraphs (i)

and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001).  President Bush

must make this determination in writing.  The Executive Order was neither authorized

7

nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

23.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

24.    The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioners Alkhemisi and Belgaid at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioners Alkhemisi and Belgaid, were, and are, being made by Respondents in the United States and in this judicial district.

25.    President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioners Alkhemisi and Belgaid are subject to the Executive Order.

26.   Petitioners Alkhemisi and Belgaid are not properly subject to the Executive Order.

27.   Petitioner has not been, and is not being, detained lawfully either pursuant to the

Executive Order, President Bush's authority as Commander-in-Chief and/or under the

laws and usages of war. Petitioners were not arrested or detained by the United States in

the course of an armed conflict. Petitioners Alkhemisi and Belgaid are not properly

detained under President Bush's authority as Commander-in-Chief or under the laws and

usages of war.

### Guantánamo Bay Naval Station

28.   On or about January 11, 2002, the United States military began transporting prisoners

captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo

Bay, Cuba. In April 2002, all prisoners were transferred to a Camp Delta, a more

permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta

and Camp Five, an additional maximum-security interrogation and detention center.

29.   Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in

the federal courts. *Rasul v. Bush*, 542 U.S. ___ , 124 S.Ct. 2686, 2698 (June 28, 2004).

30.   By at least 2002, the precise date being unknown to counsel, but known to Respondents,

the United States military transferred Petitioners Alkhemisi and Belgaid to Guantánamo,

where they has been held ever since, in the custody and control of Respondents.

### The Conditions of Detention at Guantánamo

31.   Since gaining control of Petitioners Alkhemisi and Belgaid, the United States military has

held them virtually *incommunicado*.

32.   Upon information and belief, Petitioners Alkhemisi and Belgaid have been or will be

forced to provide involuntary statements to Respondents' agents at Guantánamo and have

been or will be interrogated repeatedly by agents of the United States Departments of

Defense and Justice, and the Central Intelligence Agency, though he has not been

charged with an offense and has not been notified of any pending or contemplated

charges. They have not appeared before a lawful military or civilian tribunal, and have

not been provided access to counsel or the means to contact and secure counsel. They

have not been adequately informed of his rights under the United States Constitution, the

regulations of the United States Military, the Geneva Convention, the International

Covenant on Civil and Political Rights, the American Declaration on the Rights and

Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary

international law. Indeed, Respondents have taken the position that Petitioners

Alkhemisi and Belgaid should not be informed of these rights. As a result, Petitioners

Alkhemisi and Belgaid lack any ability to protect or to vindicate their rights under

domestic and international law.

33.     Upon information and belief, Petitioners Alkhemisi and Belgaid have been forced to

provide involuntary statements to Respondents' agents, employees, and/or contract

employees at Guantánamo.

34.     Upon information and belief, Petitioners Alkhemisi and Belgaid have been held under

conditions that violate their constitutional and international rights to dignity and freedom

from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*,

United Nations Press Release, "United Nations Human Rights Experts Express

Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005;

International Committee of the Red Cross, Press Release, "The ICRC's Work at

Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross,

Operational Update, "US Detention Related to the Events of September 11, 2001 and Its

Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States*

*of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*,

at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR

511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantánamo Bay*, The

Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5. Indeed, many

of these violations - including isolation for up to 30 days, 28-hour interrogations, extreme

and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing,

hooding, and the use of dogs to create anxiety and terror - were actually interrogation

techniques approved for use at Guantánamo by the most senior Department of Defense

lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to

Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee*

*Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy*

*and Operational Considerations*, at 62-65 (Apr. 4, 2003).

35.    In a confidential report to the United States government, the ICRC charged the U.S.

military with intentional use of psychological and physical coercion during interrogations

on prisoners at Guantánamo that is "tantamount to torture." See Neil A. Lewis, "Red

Cross Finds Detainee Abuse in Guantánamo," New York Times, Nov. 30, 2004, at Al.

The report includes claims that doctors and other medical workers at Guantánamo

participated in planning for interrogations. Id.; see also M. Gregg Bloche and Jonathan H.

Marks, "When Doctors Go to War," New England Journal of Medicine, Jan. 6, 2005, at

3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at

Guantánamo have appeared, including FBI memos detailing torture and "highly

aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. See Guantánamo:  An Icon of Lawlessness, Amnesty International, Jan. 6, 2005, at 3-5; see also Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo ," New York Times, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," Washington Post, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," New York Times, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," Washington Post, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.  Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005.[1]

36.    The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information

---

[1]      Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement:  Detention in Afghanistan and Guantánamo Bay*, 300, at http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf).  The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantánamo Abuses*, Assoc. Press, Nov. 4, 2004.

from the detainees.  *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

37.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush.  Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

38.     In published statements, President Bush and Secretary Rumsfeld, and predecessors of Hood and Bumgarner, respectively, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. See, e.g., Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . .  'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo

Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

39.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. See Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14, 2005).

40.    Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detained Petitioners under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at Al.  Moreover, the Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo.  Christopher Cooper, "In Guantánamo , Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at Al; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

41.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

42.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the Due Process

Clause of the Fifth Amendment to the Constitution of the United States. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioners Alkhemisi and Belgaid the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

43.    To the extent that Petitioners Alkhemisi's and Belgaid's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

44.    Accordingly, Petitioners Alkhemisi and Belgaid are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF<br>(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

45.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

46.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights of Petitioners Alkhemisi and Belgaid to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

47.    Accordingly, Petitioners Alkhemisi and Belgaid are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF
## (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

48.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

49.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioners Alkhemisi and Belgaid the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

50.     Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

51.     Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

52.     Accordingly, Petitioners Alkhemisi and Belgaid are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF
## (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
## ARBITRARY DENIAL OF DUE PROCESS)

53.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

54.     By the actions described above, Respondents have denied and continue to deny Petitioners Alkhemisi and Belgaid the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

55.    Accordingly, Petitioners Alkhemisi and Belgaid are entitled to habeas, declaratory, and

injunctive relief, as well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF
## (ALIEN TORT STATUTE - TORTURE)

56.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.    By the actions described above, the Respondents directed, ordered, confirmed, ratified,

and/or conspired to bring about acts that deliberately and intentionally inflicted severe

physical and psychological abuse and agony upon Petitioners Alkhemisi and Belgaid in

order to obtain coerced information or confessions from him, punish or intimidate

Petitioners Alkhemisi or Belgaid or for other purposes.  Among other abuses, Petitioners

Alkhemisi and Belgaid have been held in conditions of isolation; placed in constant

vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy;

shackled with heavy chains and irons; placed in solitary confinement for minor rule

infractions for prolonged periods of time; interrogated while shackled and chained in

painful positions; exposed to extremes of temperature; subjected to violent behavior or

the threat of violence; threatened with rendition to countries that practice torture; sexually

humiliated; denied access to counsel and family; deprived of adequate medical care; and

subjected to repeated psychological abuse.

58.    The acts described herein constitute torture in violation of the law of nations under the

Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law

prohibiting torture as reflected, expressed, and defined in multilateral treaties and other

international instruments, international and domestic judicial decisions, and other

authorities.

59.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioners Alkhemisi and Belgaid.

60.    Petitioners Alkhemisi and Belgaid were forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    The acts described herein constitute arbitrary arrest and detention of Petitioners Alkhemisi and Belgaid in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

63.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioners Alkhemisi and Belgaid in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

64.    As a result of Respondents' unlawful conduct, Petitioners Alkhemisi and Belgaid have been and is deprived of his freedom, separated from his family, and forced to suffer

severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

65.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

66.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioners Alkhemisi and Belgaid in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

67.    As a result of Respondents' unlawful conduct, Petitioners Alkhemisi and Belgaid have been and are deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse, and are therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION
### UNLAWFUL DETENTION)

68.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

69.    Petitioners Alkhemisi and Belgaid are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind. The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

70.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioners Alkhemisi and Belgaid and transfer them to military detention, and by authorizing and ordering their continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioners Alkhemisi and Belgaid.

71.    The military seizure and detention of Petitioners Alkhemisi and Belgaid by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that the Executive asserts that Petitioners' detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

72.    To the extent that Respondents assert that their authority to detain Petitioners Alkhemisi and Belgaid derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

73.    Accordingly, Petitioners Alkhemisi and Belgaid are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## NINTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

74.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

75.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat

against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

76.    By arbitrarily and capriciously detaining Petitioners Alkhemisi and Belgaid in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vives* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

77.    Accordingly, Petitioners Alkhemisi and Belgaid are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE
PROCESS)

78.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

79.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioners Alkhemisi and Belgaid the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

80.    Accordingly, Petitioners Alkhemisi and Belgaid are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

81.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

82.  Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioners Alkhemisi's and Belgraid's right to consult with counsel by conditioning counsel's access to Petitioners on unreasonable terms, including classification/declassification procedures, all in violation of Petitioners Alkhemisi's Belgaid's attorney-client privilege, their work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

83.  Accordingly, Petitioners Alkhemisi and Belgaid are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## V.
## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.  Designate Omar Deghayes as Next Friend of Petitioners;

2.  Grant the Writ of Habeas Corpus and order Respondent to release Petitioners Alkhemisi and Belgaid from their current unlawful detention;

3.  Order that Petitioners Alkhemisi and Belgaid be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.  Order that Petitioners Alkhemisi and Belgaid cannot be transferred to any other country without the specific written agreement of Petitioners and Petitioners' counsel while this action is pending;

5.  Order that Petitioners Alkhemisi and Belgaid cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk those Petitioners will be subject to torture;

22

6.   Order Respondents to allow counsel to meet and confer with Petitioners Alkhemisi and Belgaid, in private and unmonitored attorney-client conversations;

7.   Order Respondents to cease all interrogations of Petitioners Alkhemisi and Belgaid, direct or indirect, while this litigation is pending;

8.   Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners Alkhemisi and Belgaid;

9.   Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

10.  Order and declare that the prolonged, indefinite, and restrictive detention of Petitioners Alkhemisi and Belgaid without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

11.    Grant such other relief as the Court may deem necessary and appropriate to protect

Petitioner's rights under the common law, the United States Constitution, federal

statutory law, and international law.

Dated:  October 5, 2005                    Respectfully submitted,

C. Clark Hodgson, Jr. (PA 02082)
Andrew J. DeFalco (PA 84360)
Daniel M. Hanifin (PA 94659)
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA  19103-7098
Tel.: (215) 564-8026
Fax: (215) 564-8120

Counsel for Petitioners

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.

Dated: October 5, 2005

_C. Clark Hodgson_

C. Clark Hodgson, Jr. (PA 02082)
Andrew J. DeFalco (PA 84360)
Daniel M. Hanifin (PA 94659)
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA  19103-7098
Tel.: (215) 564-8026
Fax: (215) 564-8120

Counsel for Petitioners

393451

EXHIBIT A

## AUTHORIZATION

I, OMAR DEGHAMES, UNDERSTAND THE TERM "NEXT FRIEND", AND AM ACTING IN THAT CAPACITY ON BEHALF OF THE FOLLOWING:

| | | |
|---|---|---|
| ABDUL RAZAK ALI-HAJ | CAMP Δ | LIBYA |
| ✓ ISMAIL (ALKHAMESI) | CAMP Δ | LIBYA |
| AHMED (TRIPOLI) | CAMP Δ or IV | LIBYA |
| ABDUL RAUF (ASABI) | CAMP IV | LIBYA |
| Abu ABDUL RAUF (ZALITAN) | CAMP Δ ███ | LIBYA |
| FARIS (DARNA) | CAMP Δ | LIBYA |
| ✓ SAIB (DARNA) | CAMP Δ | LIBYA |
| OMAR MOHAMMED ~~ABDUL~~ (~~~~ KHALIFA ███ | CAMP V | LIBYA |
| MOHAMMED (RIMI) | CAMP Δ | LIBYA |

I KNOW THAT THEY WANT LEGAL ASSISTANCE TO SECURE THEIR FREEDOM AND I HEREBY AUTHORIZE Clive Stafford Smith, AND ANYONE AUTHORIZED BY HIM, TO ASSERT MY LEGAL RIGHTS. 8th MARCH 2005.

_(signature)_

OMAR DEGHAMES