# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMAL KIYEMBA, as next friend of ABDUSABUR DOE, *et al.*, | ) ) ) ) |  |
| Petitioners, | ) ) |  |
| v. | ) ) | Civil Action No. 05-CV-01509 (RMU) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) ) |  |
| Respondents. | ) ) |  |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO
PETITIONERS' EMERGENCY MOTION FOR ORDER (1) DIRECTING
RESPONDENTS TO COMPLY WITH PROTECTIVE ORDER AND
TO PERMIT AND FACILITATE ATTORNEY MEETINGS WITH PETITIONERS
AND (2) IMPOSING A SANCTION UPON RESPONDENTS**

Respondents hereby respectfully submit this memorandum in opposition to petitioners' motion for an order directing respondents to comply with the Protective Order entered in this case and to facilitate attorney meetings with petitioners and for sanctions (dkt. no. 54) ("Petrs' Motion").

Petitioners' motion should be denied.  The motion asks the Court to compel privileged, in-person access for counsel to four purported petitioners in this case with respect to whom counsel has failed to provide appropriate evidence of authority to represent the detainees.  As an initial matter, the Detainee Treatment Act of 2005 withdraws jurisdiction from the Court to grant the relief requested by petitioners' counsel.  Furthermore, notwithstanding the withdrawal of the Court's jurisdiction under the Detainee Treatment Act, counsel's request for a visit with respect to the four petitioners at issue should be denied because respondents have complied and continue

to comply with the Protective Order.  The Protective Order does not require respondents to permit a visit by counsel with any particular petitioner in this case.  While the Revised Procedures for Counsel Access to Detainees annexed to the Protective Order operate under the assumption of counsel visits occurring in that they set certain terms, conditions and limitations applicable to any such visits, they do not order respondents to provide a visit on demand of counsel in the first place.  Also, another provision of the Protective Order confirms that respondents acted appropriately in declining to schedule a visit with the four detainees where counsel has not yet provided appropriate evidence of his or her authority to represent the detainees.  Furthermore, petitioners' request for sanctions should be rejected.

For these reasons, petitioners' motion should be denied.

## BACKGROUND

On July 29, 2005, counsel for petitioners filed a petition for writ of *habeas corpus* on behalf of nine individuals alleged to be detained at Guantanamo Bay.  See Petition (dkt. no. 1).  The case was filed through another Guantanamo Bay detainee, Jamal Kiyemba,[1] purporting to act as a next friend on behalf of the named petitioners.  See Petition; Petrs' Motion, Ex. 4.  Mr. Kiyemba also purports to act as "next friend" for more than two dozen other detainees in other cases.  See Petrs' Motion, Ex. 4.  This case was one of scores of habeas petitions on behalf of Guantanamo detainees pending at the time of filing, and one of almost 200 currently pending, generally all of which have been stayed, formally or otherwise, pending a ruling from the D.C.

---

[1] Mr. Kiyemba was repatriated to Uganda several months ago and is no longer detained in Guantanamo.

Circuit Court of Appeals in related appeals before it, including regarding the withdrawal of *habeas* jurisdiction of the courts under the Detainee Treatment Act of 2005.

On September 13, 2005, the Court, as was routine at the time in all of the Guantanamo detainee cases pending before it, entered in this case the Protective Order entered in other Guantanamo detainee cases pending before other Judges of this Court.  See dkt. no. 8[2]; In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004) ("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004).  The first two paragraphs of the Protective Order set forth its premises, function, and scope:

> 1.     This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know."  This case may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.
>
> 2.     The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

---

[2] The Court's September 13, 2005 Order also stayed the case in light of the pending appeals of other Guantanamo cases and required advance notice of any transfer of petitioners from Guantanamo.  Respondents have appealed the advance notice requirement, and petitioners have cross-appealed the stay.  See dkt. nos. 35, 42.

- 3 -

Id., ¶¶ 1, 2.

To serve this overarching function of "prevent[ing] the unauthorized disclosure or dissemination of classified national security information and other protected information," id. at 1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S. Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A."  Id., ¶ 6 (emphasis added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A *to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information*."  Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees and sets out procedures and requirements for the handling of information obtained from and delivered to detainees.  For example, it requires that visiting counsel obtain a security clearance, see id., Ex. A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the counsel access procedures.  See id., Ex. A, § III.B.  Further, it provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee."  Id., Ex. A, § III.C.1.  In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of

- 4 -

detainees.  In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further require a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee.[3]  See Protective Order, Ex. A, § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee").

   Respondents in this case reviewed the submission and list of names from the purported "next friend," Mr. Kiyemba, see Petrs' Motion, Ex. 4, and filed a motion for an order to show cause why the case should not be dismissed for lack of a showing that the putative "next friend" satisfied standing requirements articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149 (1990).  See dkt. no. 3; Whitmore, 495 U.S. at 163 ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").  As explained in the motion, a purported next friend must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of *habeas* corpus cannot challenge the legality of his detention himself; and (2) he must have a significant relationship with this detainee in order to demonstrate that he is truly dedicated to this detainee's best interests.  Id. at 163-64.  Absent such a showing, court jurisdiction over a petition is lacking, and the case must

---

[3] This two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit was appropriately established in light of the fact that the Guantanamo habeas cases pending at the time the access procedures were negotiated and established were uniformly "next friend" cases.

be dismissed. See Resps' Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing at 6-15 (dkt. no. 3); Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing at 3-11 (dkt. no. 10). In addition to noting the absence of the requisite showing in this case, the motion further explained the various avenues available to detainees such as petitioners in this case for directly accessing the Court or initiating a challenge to the legality of their detention themselves.

Petitioners' counsel were subsequently able to obtain and present asserted evidence of direct authorization by four of the petitioners for this habeas action and an arguably legitimate family next friend authorization for one other petitioner. Accordingly, respondents challenge with respect to next friend standing remains live with respect to four purported petitioners in this case, referred to in petitioners' motion as Abdul Nassir, Abdul Sabour, Hammad Doe, and Khalid Doe. Petitioners' counsel have requested a visit with all of the petitioners in the case, including the four disputed petitioners, for July 16-23, 2005. (Petitioners' counsel originally requested a visit beginning July 10, 2005, but modified their request for logistical reasons.) Approval by Guantanamo authorities of the logistics of the requested July 16-23 visit remains pending.

## ARGUMENT[4]

I. **The Detainee Treatment Act of 2005 Withdraws District Court Jurisdiction to Grant the Relief Requested by Petitioners.**

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), became law.  The Act, among other things, amends 28 U.S.C. § 2241 to remove court jurisdiction to hear or consider applications for writs of *habeas corpus* and other actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay, Cuba. Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such aliens.  In addition, the Act creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens held as enemy combatants; section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.  Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider habeas and other actions brought by Guantanamo detainees, was made immediately effective without reservation for pending cases, and section 1005(e)(2), which establishes the exclusive review mechanism in the D.C. Circuit, was made expressly applicable to pending cases.  Id. § 1005(h).  In light of the statutory withdrawal of this Court's jurisdiction, and the creation of an

---

[4] The arguments presented herein essentially track those recently presented on this issue in other cases before other Judges of the Court.  Section III of the Argument additionally addresses petitioners' request for sanctions in this case.

- 7 -

exclusive review mechanism in the D.C. Circuit, the Court has no jurisdictional basis to order the relief requested by petitioners.

The effect of the Act was addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit,[5] and our understanding is that it is the sense of the Court that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before deciding any pending motions.  In light of this and given the new, statutory withdrawal of the Court's jurisdiction, at a minimum a stay of all proceedings in this case, including with respect to petitioners' request for relief, is appropriate pending the resolution of the effect of the Act.  Indeed, because the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," id. § 1005(e)(1), it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction. See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).[6]

---

[5]  Oral argument before the D.C. Circuit was held on March 22, 2006.

[6]  Respondents previously intended to file a motion to dismiss this case based upon the Act's withdrawal of the Court's jurisdiction, see Notice of Supplemental Authority (dkt. no. 48), but refrained from doing so when they were informed that the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in the Guantanamo habeas cases.  During this interim period, respondents have permitted counsel visits and other privileged access to properly represented detainees in cases where the Protective Order had already been entered, and its requirements satisfied by counsel, pending a decision from the D.C. Circuit.  Once the Act's withdrawal of the Court's jurisdiction became effective, however, respondents have consistently opposed entry of the Protective Order in cases where it had not already been entered.  In any event, respondents' actions in other Guantanamo habeas cases cannot be construed as a waiver or concession of jurisdiction that permits the Court

Furthermore, as explained infra § II, the requested relief in this matter is not merely for enforcement of an extant court order. The Protective Order regime in this case does not itself require or compel a counsel visit; rather, to award petitioners the relief they are requesting, the Court would be asserting jurisdiction and authority independent of the Protective Order to order a visit or grant access to a detainee. Such an assertion of jurisdiction would be improper in light of the Detainee Treatment Act's withdrawal of habeas jurisdiction of this Court and investment of exclusive jurisdiction in the Court of Appeals, and respondents' argument in this regard is in no way immaterial or premature. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

II. **Notwithstanding the Act's Withdrawal of the Court's Jurisdiction to Grant the Relief Requested By Petitioners, Petitioners' Request to Meet With the Petitioners at Issue Should Be Denied Because Sufficient Evidence of Counsel's Authority to Represent Those Detainees is Lacking and the Protective Order Does Not and Cannot Require Respondents to Permit a Visit in Such Circumstances.**

Notwithstanding the Act's withdrawal of district court jurisdiction in this case, counsel's request for access to the four disputed petitioners at issue in this matter should be denied because respondents have not acted contrary to the Protective Order and accompanying counsel access procedures in declining to schedule a visit with these petitioners. First, as explained supra, the primary purpose of the access procedures — which are subsidiary to a Protective Order

---

to order counsel access in this case. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived").

preventing unauthorized disclosure of classified or protected information, and which are incorporated into the Protective Order "to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information," Protective Order, ¶ 6 — is to set certain terms, conditions and limitations for habeas counsel's access to properly represented detainees. Whether some other authority aside from the access procedures would entitle counsel to visit a properly represented petitioner at Guantanamo, the access procedures do not require respondents to permit a visit by counsel with any particular petitioner in this case. While the access procedures certainly operate with the assumption that counsel visits will occur in that they set the terms and procedures applicable to any such visits, they do not themselves order respondents to provide such visits on demand of counsel in the first place. The access procedures do not order or direct a counsel visit, and petitioners therefore cannot demonstrate a clear violation of the Protective Order in this regard.

Second, respondents are acting appropriately and consistently with the access procedures in deferring the scheduling of a counsel visit to Guantanamo Bay until counsel provide respondents with sufficient evidence of their authority to represent the petitioners at issue. As explained supra, the access procedures require two types of authorizations of representation from counsel. Initially, "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." See Protective Order, Ex. A, § III.C.1. In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of proper "next friends" who have filed petitions on behalf of detainees, demonstrating that the requirements established by the Supreme Court for next friend standing are met. Assuming such

evidence is produced, and subject to other requirements of the Protective Order and access procedures, in next friend cases, the access procedures further require a second type of authorization, directly from the detainee, once counsel is provided access to the detainee.  See id. § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee.").  In this case, counsel for petitioners have yet to provide respondents with appropriate evidence of their authority to represent the petitioners at issue.  Therefore, respondents acted consistently with the Protective Order in declining to permit counsel to visit these petitioners until such evidence of authority, a prerequisite to being granted access to detainees at Guantanamo Bay, is provided to the government.

Further, given that this case was filed through another detainee acting as putative next friend, and was not directly authorized by the detainees at issue, respondents are challenging the standing of these so-called "next friends" in this case, making these petitions jurisdictionally improper.  See Resps' Motion for Order to Show Cause Why Case Should not be Dismissed for Lack of Proper "Next Friend Standing, dkt. no. 3.  The putative next friend petitioner — Jamal Kiyemba — should be required to establish proper next friend status and justify the exercise of the Court's jurisdiction over these petitions.  See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").  To do so, he must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainees on whose behalf he claims to file a petition for writ of *habeas corpus* cannot challenge the legality of their detention themselves; and (2) he must have a significant relationship with

these detainees in order to demonstrate that he is truly dedicated to their best interests. Id. at 163-64. Petitioners have not yet established that Jamal Kiyemba satisfies these requirements. If petitioners cannot demonstrate that the detainee meets the Whitmore requirements for next friend standing, the Court cannot exercise jurisdiction over the petitions, and they must be dismissed. Thus, because respondents dispute whether this case was authorized by a legitimate next friend, respondents are acting consistent with the access procedures in deferring scheduling of a counsel visit pending appropriate "evidence of . . . authority to represent the detainee," i.e., authorization by a next friend who satisfies the requirements of Whitmore v. Arkansas, 495 U.S. at 163-64.

In support of their position, petitioners rely on Magistrate Judge Kay's recent March 21, 2006 Memorandum Opinion and Order in Adem v. Bush, No. 05-CV-0723 (RWR), and his May 11, 2006 Memorandum Order in Sadar Doe v. Bush, No. 05-CV-1704 (JR). See Pet's Mot. at 3-4. The interpretation of the Protective Order set forth in these opinions raises significant interpretive and also jurisdictional issues – jurisdictional issues relating to the effect of the Detainee Treatment Act of 2005, as well as grave jurisdictional issues independent of the Act. See Respondents' Motion for Stay and Reconsideration of Magistrate Judge's May 11, 2006 Memorandum Order in Sadar Doe v. Bush, No. 05-CV-1704 (JR) (dkt. nos. 34, 35) (attached as Exhibit A). In sum (and as more fully explained in respondents' attached motion in Sadar Doe), the interpretation of the Protective Order reflected in Adem and Sadar Doe is inconsistent with the history and context of the language of the Protective Order as it was developed in the Guantanamo habeas cases under Senior Judge Joyce Hens Green, cases coordinated pursuant to the order and direction of the Court as a whole, including through a September 15, 2004 Resolution of the Executive Session. It is unreasonable in such

circumstances for the Court to interpret the Protective Order inconsistent with that development and long-standing practice, especially in light of the Detainee Treatment Act and the previously expressed sense of the Court to defer action in the Guantanamo habeas cases pending guidance from the Court of Appeals on the jurisdictional issue. Further, even aside from the Detainee Treatment Act, the interpretation of the Protective Order reflected in Adem and Sadar Doe results in the extra-legal assertion of jurisdiction by the Court inconsistent with the habeas statute, 28 U.S.C. § 2242, which requires that (1) the individual who is seeking habeas relief must sign and verify the petition, i.e., the petition must be directly authorized; or (2) the petition must be signed and verified by another person acting on that individual's behalf – a "next friend" – who satisfies certain requirements per Whitmore in order to properly serve in this capacity. Neither of these requirements need be satisfied under the interpretation of the Protective Order reflected in Adem and Sadar Doe, which also discounts respondents' efforts to provide reasonable mechanisms for detainees to contact the Court or counsel directly. The interpretation of the Protective Order at issue also raises significant separation of powers issues by requiring respondents to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements. Such an arrangement flies in the face of fundamental standing and jurisdictional concepts in the law of *habeas corpus*.

Given the serious interpretive and jurisdictional questions raised in the Adem and Sadar Doe decisions, and for the reasons set forth in Exhibit A attached hereto and incorporated herein,

- 13 -

this Court should not apply the interpretation of the Protective Order set forth in <u>Adem</u> and <u>Sadar Doe</u> to this case.

In addition, the Court should not apply its prior reasoning because the putative next friend petitioner in this case submitted an insufficient "authorization" in which he claims to act as a "next friend," and states his belief that the almost three dozen detainees listed in the declaration want legal representation to challenge their detention, without providing any specifics as to any particular detainee. <u>See</u> Petrs' Motion, Ex. 4. Further, the supplemental declaration supplied with petitioners' current motion as well says nothing specific about why the petitioners at issue in this case in particular were or are not able to avail themselves of the means to access the Court and/or counsel provided by the Department of Defense, which has endeavored to provide reasonable mechanisms, consistent with the jurisdictional requirements in *habeas* cases, for detainees to contact the Court or a source for counsel directly, should they choose to do so. Any dissatisfaction with those mechanisms is not, in any event, appropriate justification for an interpretation of the Access Procedures that is inconsistent with the jurisdictional requirements in *habeas* cases.[7]

---

[7] If the Court does compel respondents to provide petitioners' counsel in-person access to the petitioners at issue, however, it should not order that the visits take place during the requested July 16-23 visit since the logistical feasibility of that visit is still pending approval by Guantanamo authorities.

**III.     Petitioners' Request for Sanctions Should be Denied.**

Petitioners' counsel also takes offense at respondents' position in this matter, claiming in six sentences of argument that a violation of FED. R. CIV. P. 11 has occurred and a monetary sanction is warranted. Petrs' Motion at 13. The fact of the matter is, however, that the issue of interpretation of the Protective Order and resolution of next friend standing issues have not been resolved in *this* case. Respondents are within their rights in asserting their position in such circumstances, and, indeed, are arguably obligated to assert the position in order to avoid waiver of the position and to preserve a right to seek review by the District Judge in this case and the Court of Appeals. See FED. R. CIV. P. 72(a); see also Adem v. Bush, 2006 WL 1193853 at *7 (Apr. 28, 2006) (asserting that issue not raised with Magistrate Judge cannot be raised on reconsideration before District Judge). Sanctions of any kind, therefore, are not warranted, and petitioners' request should be denied.

Not only is petitioners' request for sanctions lacking in a legitimate factual foundation, it is also legally and procedurally inappropriate. Petitioners' request for a monetary sanction under Rule 11 is not authorized, and, in fact, is specifically prohibited by the Rule. See FED. R. CIV. P. 11(c)(2)(A). Further, petitioners' request for sanctions failed to comply with the procedural strictures of Rule 11. See FED. R. CIV. P. 11(c)(1) (motion for sanctions must be filed separately from other motions and presented to opposing counsel at least 21 days prior to filing with the Court). In addition, a monetary sanction as requested by petitioners would be barred by sovereign immunity considerations. See United States v. Horn, 29 F.3d 754, 763-67 (1st Cir. 1994).

Petitioners' counsel is entitled to argue against respondents' regarding the issues involved in their motion, but counsel should not be entitled to harass respondents with improper threats of monetary sanctions, which is an extraordinary remedy to be imposed only with the greatest of caution.  See FED. R. CIV. P. 11; cf. Joshi v. Professional Health Services, Inc., 817 F.2d 877, 879 (D.C. Cir. 1987).

## CONCLUSION

For these reasons, petitioners' emergency motion for an order directing respondents to comply with the Protective Order and for sanctions should be denied.

Dated: June 20, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

     /s/ Terry M. Henry
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents

- 16 -