# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMAL KIYEMBA, as next friend of ABDUSABUR DOE, *et al.*, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-01509 (RMU) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' EMERGENCY MOTION FOR STAY AND RECONSIDERATION OF MAGISTRATE JUDGE'S JUNE 29, 2006 MEMORANDUM ORDER**

Respondents hereby object to and seek reconsideration of Magistrate Judge Alan Kay's June 29, 2006 Memorandum Order ("Mem. Order") requiring that respondents promptly permit counsel to meet with four individuals detained by the Department of Defense ("DoD") at the United States Naval Base in Guantanamo Bay, Cuba. As explained below, the Magistrate Judge's Order is clearly erroneous and contrary to law for several reasons. First of all, the Detainee Treatment Act of 2005 creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of aliens detained as enemy combatants at Guantanamo Bay, such as the four individuals who are the subject of the Magistrate Judge's Order in this case. Therefore, the Magistrate Judge has no jurisdictional basis to issue any relief in this case.

Moreover, the Magistrate Judge clearly erred in concluding that the governing protective order and counsel access procedures in the Guantanamo *habeas* litigation do not require counsel to supply proof of authority to represent a detainee prior to being permitted privileged access to

the detainee.  To the contrary, the language, structure, and history of the counsel access

procedures evidence a two-layer requirement regarding counsel's authority to bring and then

maintain a *habeas* corpus petition on behalf of a Guantanamo detainee.  First, in a case such as

this brought by a putative "next friend," prior to having privileged access to the detainee, counsel

must produce sufficient evidence of counsel's authority to represent the detainee through a

proper "next friend."  Second, after having the opportunity to meet with the detainee, counsel

must submit evidence of the detainee's authorization for counsel to represent him.  The

Magistrate Judge clearly erred by conflating these separate, and practical, authorization

requirements into a single requirement that counsel who purportedly represents a particular

detainee must be provided with privileged access to the detainee on demand and then need only

produce evidence of authority to represent the detainee after conducting privileged meetings with

the detainee.  In reaching this conclusion, the Magistrate Judge created an extra-legal scheme for

establishing jurisdiction in the Guantanamo *habeas* cases that is contrary to law, including the

plain terms of the *habeas* statute and the well-established jurisprudence regarding next friend

standing.  Further, by requiring the government to provide direct, privileged access to wartime

detainees in a military detention facility for counsel merely purporting to represent a detainee,

without any showing by counsel of proof of appropriate authority to represent the detainee

directly or through a next friend satisfying appropriate standing requirements, the Magistrate

Judge's order offends separation of powers.

For these reasons, as more fully explained below, respondents move this Court for an

immediate stay of the Magistrate Judge's Order to the extent it requires action by respondents

pending the Court's resolution of respondents' motion for reconsideration.  Further, because the

Magistrate Judge's Order is clearly erroneous and contrary to law, the Order should be vacated and set aside forthwith.

### BACKGROUND

On July 29, 2005, counsel for petitioners filed a petition for writ of *habeas corpus* on behalf of nine individuals alleged to be detained at Guantanamo Bay.  See Petition (dkt. no. 1). The case was filed through another Guantanamo Bay detainee, Jamal Kiyemba,[1] purporting to act as a next friend on behalf of the named petitioners.  See Petition; Petitioners' Emergency Motion for an Order Directing Respondents to Comply with the Protective Order and to Permit and Facilitate Attorney Meetings with Petitioners and Imposing a Sanction Upon Respondents (dkt. no. 54) ("Petrs' Motion"), Ex. 4.  Mr. Kiyemba also purports to act as "next friend" for more than two dozen other detainees in other cases.  See Petrs' Motion, Ex. 4.  This case was one of scores of *habeas* petitions on behalf of Guantanamo detainees pending at the time of filing, and one of almost 200 currently pending, generally all of which have been stayed, formally or otherwise, pending a ruling from the D.C. Circuit Court of Appeals in related appeals before it, including regarding the effect of the Detainee Treatment Act of 2005 on the jurisdiction of the district court over these cases.

On September 13, 2005, the Court, as was routine at the time in all of the Guantanamo detainee cases pending before it, entered in this case the Protective Order entered in other Guantanamo detainee cases pending before other Judges of this Court.  See dkt. no. 8[2]; In re

---

[1] Mr.  Kiyemba was repatriated to Uganda several months ago and is no longer detained in Guantanamo.

[2] The Court's September 13, 2005 Order also stayed the case in light of the pending appeals of other Guantanamo cases and required advance notice of any transfer of petitioners

<u>Guantanamo Detainee Cases</u>, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004) ("Protective Order");

Order Supplementing and Amending Filing Procedures Contained in November 8, 2004

Amended Protective Order in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u> (D.D.C.

Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in <u>In re</u>

<u>Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u> (D.D.C. Nov. 10, 2004).  The first two

paragraphs of the Protective Order set forth its premises, function, and scope:

> 1.    This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know."  This case may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

> 2.    The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

<u>Id.</u>, ¶¶ 1, 2.

To serve this overarching function of "prevent[ing] the unauthorized disclosure or

dissemination of classified national security information and other protected information," <u>id.</u> at

1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and

conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S.

Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents

---

from Guantanamo.  Respondents have appealed the advance notice requirement, and petitioners
have cross-appealed the stay.  <u>See</u> dkt. nos. 35, 42.

brought into and out of counsel meetings, attached hereto as Exhibit A." Id., ¶ 6 (emphasis

added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and

conditions established in the procedures contained in Exhibit A *to the extent they place*

*limitations on petitioners' counsel in their access to and interaction with petitioners or handling*

*of information*." Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in

Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, in turn, set certain terms,

conditions, and limitations for *habeas* counsel's access to properly represented detainees and sets

out procedures and requirements for the handling of information obtained from and delivered to

detainees.  For example, it requires that visiting counsel obtain a security clearance, see id., Ex.

A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the

counsel access procedures.  See id., Ex. A, § III.B.  Further, it provides that "[p]rior to being

permitted access to the detainee," counsel must "provide evidence of his or her authority to

represent the detainee."  Id., Ex. A, § III.C.1.  In other Guantanamo detainee cases, this evidence

has typically taken the form of letters from detainees directly authorizing a challenge to their

detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of

detainees.  In a proper "next friend" case, because the detainee "remains the real party in

interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further

require a second, subsequent type of authorization, directly from the detainee, once counsel in a

proper next friend case is provided access to the detainee.[3]  See Protective Order, Ex. A,

_____

[3]  This two-layer requirement regarding counsel's authority to bring and then maintain the
lawsuit was appropriately established in light of the fact that the Guantanamo *habeas* cases
pending at the time the access procedures were negotiated and established were uniformly "next

§ III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee").

Respondents in this case reviewed the submission and list of names from the purported "next friend," Mr. Kiyemba, see Petrs' Motion, Ex. 4, and filed a motion for an order to show cause why the case should not be dismissed for lack of a showing that the putative "next friend" satisfied standing requirements articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149 (1990). See dkt. no. 3; Whitmore, 495 U.S. at 163 ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").    As explained in the motion, a purported next friend must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of *habeas corpus* cannot challenge the legality of his detention himself; and (2) he must have a significant relationship with this detainee in order to demonstrate that he is truly dedicated to this detainee's best interests.  Id. at 163-64.  Absent such a showing, court jurisdiction over a petition is lacking, and the case must be dismissed.  See Resps' Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing at 6-15 (dkt. no. 3); Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing at 3-11 (dkt. no. 10).  In addition to noting the absence of the requisite showing in this case, the motion further explained the various avenues available to detainees such as petitioners

---

friend" cases.

in this case for directly accessing the Court or initiating a challenge to the legality of their

detention themselves.

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X,

119 Stat. 2680 ("the Act"), became law.  The Act, among other things, amended 28 U.S.C. §

2241 to remove court jurisdiction to hear or consider applications for writs of *habeas corpus* and

other actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay, and

created an exclusive review mechanism in the D.C. Circuit, applicable to pending cases, to

address the validity of the detention of such aliens held as enemy combatants.  Id. § 1005(e)(1),

(h)(2).  Shortly thereafter, respondents' counsel and representative counsel for the Guantanamo

*habeas* petitioners were informally informed by the Court that the sense of the Court was to await

anticipated guidance from the D.C. Circuit regarding the effect of the Act[4] before deciding any

pending motions, with Magistrate Judge Kay being available to assist the parties in the

negotiation and resolution of matters raised during this interim period, where appropriate.[5]

On June 14, 2006, petitioners' counsel filed a motion requesting the Court to order

respondents to permit counsel privileged access to four purported petitioners in this case, referred

---

[4]  The effect of the Act was addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit.  Oral argument before the D.C. Circuit was held on March 22, 2006.  The effect of the Supreme Court's recent decision in Hamdan v. Rumsfeld on this Court's jurisdiction is also pending before the Court of Appeals, and respondents have requested supplemental briefing on the subject.

[5]  Respondents previously intended to file a motion to dismiss based on the Act's withdrawal of the Court's jurisdiction, see Respondents' Notification of Supplemental Authority (dkt. no. 48), but refrained from doing so when they were informed of the sense of the Court, including that the Court intended not to rule upon any such motion to dismiss, were it filed, pending the D.C. Circuit's addressing the issue.

to in petitioners' motion as Abdul Nassir, Abdul Sabour, Hammad Doe, and Khalid Doe.[6]

Petitioners' counsel relied on a March 21, 2006 decision of Magistrate Judge Kay in Adem v.

Bush, 2006 WL 751309 (Mar. 21, 2006) (dkt. no. 36), recons. denied, 2006 WL 1193853 (Apr.

28, 2006) (dkt. no. 42), and a May 11, 2006 Memorandum Order in Sadar Doe v. Bush, No. 05-

CV-1704 (JR) (dkt. no. 33), in which the Magistrate Judge construed the Access Procedures

applicable in this and the other approximately 200 pending Guantanamo *habeas* cases not to

require counsel to supply any proof of authority to represent a detainee prior to being permitted

privileged access to the detainee.  In response, respondents, inter alia, noted the Detainee

Treatment Act's effect on the Court's jurisdiction over the case, and consistent with our

understanding of the sense of the Court, further noted the appropriateness of a stay of all

proceedings in the case, including with respect to petitioner's request for relief, pending the

resolution of the effect of the Act.  See dkt. no. 57.  Respondents also noted the serious

jurisdictional issues presented by respondents' challenge to the "next friend" petitioner's

standing to pursue this litigation and argued, accordingly, that the relief requested by counsel was

not appropriate pending resolution of that challenge.  See id.  Respondents further noted the

serious jurisdictional issues, even independent of the Detainee Treatment Act, presented by the

Magistrate Judge's construction of the Access Procedures.  See id.

---

[6]  After respondents asserted their challenge to next friend standing in this case, petitioners' counsel were able to obtain and present asserted evidence of direct authorization by four of the petitioners for this *habeas* action and an arguably legitimate family next friend authorization for one other petitioner.  Accordingly, respondents' challenge with respect to next friend standing remains live with respect to only four purported petitioners.  Petitioners' counsel currently have a visit to Guantanamo Bay scheduled for July 16-23, 2006, and they have requested to meet with all of the detained petitioners in this case, including the four disputed petitioners.

Despite the previously expressed sense of the Court to await anticipated guidance from the D.C. Circuit regarding the effect of the Act, on June 29, 2006, Magistrate Judge Kay issued a Memorandum Order requiring that respondents permit counsel to meet with petitioners Abdul Nassir, Abdul Sabour, Hammad Doe, and Khalid Doe at Guantanamo.[7]  <u>See</u> Mem. Order (filed June 29, 2006) (dkt. no. 60).  As in <u>Adem</u> and <u>Sadar Doe</u>, the Magistrate Judge construed the Access Procedures applicable in this case not to require counsel to supply proof of authority to represent a detainee prior to being permitted privileged access to the detainee.  <u>Id.</u>

In explaining the rationale and basis for the Order, the Magistrate Judge declined to defer a ruling on petitioners' motion, rejecting the Detainee Treatment Act as any impediment to the relief ordered.  The Magistrate Judge asserted that the relief requested in petitioners' motion "is not the type of interim relief that even remotely risks infringing on the Circuit's possible exclusive jurisdiction."  Mem. Order at 12; <u>see also id.</u> (relief requested by petitioner "has no bearing on the question of which Court has jurisdiction to review Petitioner's challenge to his detention").  The Order characterizes the request for relief as merely one for enforcement of the extant Protective Order and Access Procedures, <u>see id.</u> at 12-13, and also asserts the jurisdiction to decide petitioners' motion on the ground that counsel would "presumably" represent petitioners in any proceeding in the Court of Appeals under the exclusive review provisions of the Detainee Treatment Act, <u>id.</u> at 12, n.14.  According to the Magistrate Judge, "the need to

---

[7]  The Combatant Status Review Tribunals have determined that these four petitioners are properly classified as enemy combatants.  Accordingly, petitioners are lawfully subject to detention pursuant to the President's power as Commander in Chief or otherwise, and may be detained for the duration of the hostilities, if necessary.  The Magistrate Judge's assertion that "it seems likely that Petitioners have already been determined to be innocent," Mem. Order at 2, is therefore erroneous.

resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C.

Circuit and the Supreme Court determine that the DTA applies to those *habeas* cases currently

pending in the District Court." Id.  Thus, the Magistrate Judge concluded there was no need to

wait to resolve the issue.

Further, as to the merits of petitioners' request for relief, the Magistrate Judge

characterized the Access Procedures as making next friend issues in these cases essentially

irrelevant.  The Magistrate Judge cited Al Odah v. United States, 346 F. Supp. 2d 1, 7 (D.D.C.

2004), as concluding that Guantanamo detainees are "entitled to present the facts surrounding

their confinement to the Court . . . [and] the Court is authorized to craft the procedures necessary

to make this possible," and also described steps respondents had taken beginning in late 2004 to

notify detainees of their ability to challenge their detention through petitions for writs of *habeas*

*corpus* sent directly to the Court or filed through family members or friends.[8]  See Adem, 2006

---

[8]  Beginning in December 2004, the Department of Defense provided written notifications to all detainees at Guantanamo Bay which informed them of their right to file petitions for writ of *habeas corpus* in federal court if they desired to challenge the lawfulness of their detention.  The detainees were informed that they could ask a friend, family member, or lawyer to file a petition on their behalf, and they were also provided with the address of the United States District Court in the event that they desired to submit their own petitions to the Court through the mail system administered by the Department of Defense.  See Second Declaration of Frank Sweigart, ¶¶ 3-5 & Exs. A-C (Exhibit A to Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing, dkt. no. 10) ("Second Sweigart Declaration").

In addition to these written notifications provided to all detainees at Guantanamo Bay which advised them of their right to file petitions for writ of *habeas corpus* and options for doing so, the Department of Defense also delivered to detainees who indicated a desire to challenge the legality of their detention a notification providing these detainees with a form to complete and mail to the American Bar Association, which agreed to recruit volunteers counsel for detainees desiring representation.  Beginning in September 2005, the Department of Defense delivered (and will continue to deliver on an ongoing basis) this notification to detainees who file *pro se* petitioners for writ of *habeas corpus* and are not already represented by counsel, as well as other

- 10 -

WL 751309 at *3-*4; see Mem. Order at 3.  In light of these factors, according to the Magistrate

Judge, the "legal fiction of a 'next friend' became largely irrelevant except as a mechanism for

identifying those detainees who seek to challenge their detention in the first instance."  Mem.

Order at 7-8; see also Adem, 2006 WL 751309 at *4-*5 (noting parties' and Judges' assertedly

erroneous use of the term "next friend" "though the term's traditional legal context no longer

applied").

Accordingly, the Magistrate Judge did not conclude that Mr. Kiyemba in this case

satisfies applicable next friend standing requirements under Whitmore so that the Court could

exercise jurisdiction over the case and compel respondents to permit counsel direct, privileged

access to a wartime detainee at Guantanamo Bay, a secure military detention facility.  Rather,

applying his construction of the Access Procedures, the Magistrate Judge ordered respondents to

allow counsel to meet with petitioners Abdul Nassir, Abdul Sabour, Hammad Doe, and Khalid

Doe.  See Mem. Order at 13.

Respondents now timely move for reconsideration and a stay of the Magistrate Judge's

Memorandum Order.  See Fed. R. Civ. P. 72(a); LCvR 72.2(b).

## ARGUMENT[9]

Under Federal Rule of Civil Procedure 72(a), when a nondispositive, pretrial matter is

referred to a Magistrate Judge for determination, a party may object to the Magistrate Judge's

ruling, and "[t]he district judge to whom the case is assigned shall consider such objections and

---

detainees who indicate to Guantanamo personnel that they desire or request the assistance of
counsel.  See id., ¶ 7 & Ex. E.

[9] The arguments presented herein essentially track those recently presented on this issue
in other cases before other Judges of the Court.

shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); see 28 U.S.C. § 636(b)(1)(A). Local Civil Rule 72.2(c) similarly provides that upon a motion for reconsideration, a Judge may modify or set aside any portion of a Magistrate Judge's order "found to be clearly erroneous or contrary to law." LCvR 72.2(c).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Campbell v. Microsoft Corp., No. 04-CV-2060 (RWR), 2006 WL 463263 at *2 (D.D.C. Feb. 24, 2006) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Questions of law are reviewed de novo under the "contrary to law" standard. See Weekoty v. United States, 30 F. Supp. 2d 1343, 1344 (D.N.M. 1998). The Court, "therefore, owes no deference to the magistrate [judge]'s legal conclusions[,] and it may substitute its own judgment on questions of law." Id.

As explained below, the June 29 Memorandum Order in this case should be set aside as clearly erroneous and contrary to law.

**I.      The Magistrate Judge's Order Is Contrary to Law Because This Court Lacks Jurisdiction to Provide the Relief Called For In the Order.**

The Magistrate Judge's Order is contrary to law, first of all, because the Detainee Treatment Act of 2005 vests exclusive jurisdiction over this action, including the relief requested by petitioners, in the D.C. Circuit. The Act, among other things, amends 28 U.S.C. § 2241 to eliminate court jurisdiction to consider *habeas* petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, id., § 1005(e)(1), and creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens and final decisions of any

military commissions, id., § 1005(e)(1), (e)(2), (e)(3).  Section 1005(e)(2) of the Act states that

the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision

of a Combatant Status Review Tribunal that an alien is properly detained as an enemy

combatant," and it further specifies the scope and intensiveness of that review.  While the

Supreme Court in Hamdan v. Rumsfeld, 548 U.S. —, slip op. (U.S. June 29, 2006), recently held

that § 1005(e)(1) did not apply to *habeas* petitions pending prior to the enactment of the Act, it

reserved the question of whether the exclusive review provisions of the Act did apply to cases

pending prior to enactment.  Although the petitioner in Hamdan escaped the Act because his

challenge did not involve a final decision of a military commission within the exclusive

jurisdiction of the Court of Appeals under § 1005(e)(3), the Court stated that "[t]here may be

*habeas* cases that were pending in the lower courts at the time the DTA was enacted that do

qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3) [the

exclusive review in CTA sections].  We express no view about whether the DTA would require

transfer of such an action to the District of Columbia Circuit."  Hamdan, slip op. at 18, n.14.  The

case at bar is such a case, i.e., challenging petitioners' designation as enemy combatants through

Combatant Status Review Tribunals, and given the Act's investment of exclusive review in the

Court of Appeals, the District Court lacks jurisdiction over this action.  See Telecommunications

Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief

in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the

exclusive review of the Court of Appeals); cf. id. at 77 ("By lodging review of agency action in

the Court of Appeals, Congress manifested an intent that the appellate court exercise sole

jurisdiction over the class of claims covered by the statutory grant of review power.").

Notwithstanding the plain terms of the Act, the Magistrate Judge incorrectly concluded that "[a]llowing Petitioners to meet with their lawyers . . . is not the type of interim relief that even remotely risks infringing on the Circuit's possible exclusive jurisdiction" and that "[t]he question of when, and under what circumstances the existing Protective Order permits Petitioners to meet with their lawyers simply has no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention." Mem. Order at 12. In reaching this conclusion, the Court avoided ruling on the jurisdictional effect of the Act by essentially creating a "counsel access" exception to the Act that has no legal foundation. The Court cannot avoid the Act's jurisdictional ouster by framing the issue simply as one of counsel access. "Without jurisdiction [a] court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). Therefore, when Congress vests exclusive jurisdiction over a case in another forum, the affected court no longer has any power to act or to proceed further with the case. See Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). In this case, the Act vested exclusive jurisdiction in the Court of Appeals, which means the Court no longer has the power to order the relief the Magistrate Judge's Order provides.[10] For this reason, the Court's Order is contrary to law.

---

[10] As explained infra § II, the requested relief in this matter is not merely for enforcement of an extant court order. The Protective Order regime in this case does not itself require or compel a counsel visit; rather, to award petitioners the relief they are requesting, the Court would be asserting jurisdiction and authority independent of the Protective Order to order a visit or grant access to a detainee. Such an assertion of jurisdiction would be improper in light of the Detainee Treatment Act's investment of exclusive jurisdiction in the Court of Appeals, and respondents' argument in this regard is in no way immaterial or premature.

The Magistrate Judge also concluded that his Order was a proper exercise of authority to enforce the applicable Protective Order and Access Procedures, notwithstanding the Act's withdrawal of this Court's jurisdiction.  See Mem. Order at 12-13.  This conclusion is clearly erroneous or contrary to law.  As an initial matter, the Protective Order and Access Procedures do not order, require, or compel respondents to permit a counsel visit with a detainee.  As explained supra, the Access Procedures, which are subsidiary to a Protective Order preventing unauthorized disclosure of classified or protected information, are incorporated into the Protective Order "to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information."  Access Procedures ¶ 6.  While the Access Procedures certainly operate with the assumption that counsel visits will occur in that they set the terms and procedures applicable to any such visits, they do not themselves compel respondents to provide such visits[11] on demand of counsel.[12]  Hence, the Court cannot compel respondents to permit a visit by counsel with a detainee by relying upon "enforcement" of the terms of the Protective Order and Access Procedures.

---

[11] While the Access Procedures provide that "[r]easonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting," that language is embedded in a paragraph dealing solely with logistical arrangements as to the date and timing of otherwise appropriate counsel meetings with represented petitioners.  See Access Procedures § III.D.1.

[12] The relationship between counsel visits and the access procedures in this case would be analogous to other cases in which an omnibus protective order is entered at the outset of the case governing the use and handling of information that will be exchanged between parties in discovery.  The omnibus protective order may set the terms of how information obtained in discovery is to be treated, shared, or stored, for example, but a party's entitlement to any particular requested discovery is settled through court process (e.g., a motion to compel) and not through the protective order.  Thus, an omnibus protective order operates with the assumption that discovery will occur, but typically does not by its own terms obligate the parties to produce any particular information.

- 15 -

Thus, the cases cited in the June 29 Memorandum Order to support the order requiring

respondents to permit a counsel visit, <u>see</u> Mem. Order at 12-13, are distinguishable from the

present context.  Those cases involved either a court's authority to enforce ongoing protective

orders specifically prohibiting public disclosure of confidential discovery information[13] or the

court's power to enforce prospective injunctions though civil contempt penalties.[14]  The cases

would also be distinguishable in that while they may involve a court's authority to wind-up

previously exercised jurisdiction (such as in the oversight of the disposition of documents

obtained through court-sanctioned discovery) or to enforce valid, on-going injunctions, here the

Magistrate Judge's Order wreaks a radical reversal of long-standing practice under the Access

Procedures in the Guantanamo cases, with significant impact in the cases, including that

respondents will be required to provide direct, privileged access to wartime detainees in a

military detention facility by counsel merely purporting to represent a detainee, without any

showing by counsel of proof of appropriate authority to represent the detainee directly or through

---

[13] <u>See</u> <u>Gambale v. Deutsche Bank, AG</u>, 377 F.3d 133, 139 (2d Cir. 2004) (concluding that court has power "to dispose of material in its files as it thinks appropriate or to modify or vacate its own protective orders with respect to" confidential documents after conclusion of case); <u>Poliquin v. Garden Way, Inc.</u>, 989 F.2d 527, 535 (1st Cir. 1993) ("Where the district court does protect material during discovery, it is common to provide . . . for post-trial protection including the return or destruction of protected material."); <u>United Nuclear Corp. v. Cranford Ins. Co.</u>, 905 F.2d 1424, 1427 (10th Cir. 1990) (concluding that court has power to modify ongoing protective order prohibiting public disclosure of all discovery materials following dismissal of underlying lawsuit).

[14] <u>Broderick v. Donaldson</u>, 437 F.3d 1226 (D.C. Cir. 2006) (concluding that court has power to impose civil contempt sanctions on employer for violation of 1988 order imposing continuing obligations on employer based employee's successful sexual harassment suit); <u>Armstrong v. Executive Office of the President</u>, 1 F.3d 1247, 1281, 1289 (D.C. Cir. 1993) (concluding that court has power to impose civil contempt sanctions based on defendant's failure to comply with "multi-part declaratory and injunctive order" regarding preservation of electronic federal records).

a next friend satisfying appropriate standing requirements.  Thus, the Order improperly asserts

jurisdiction to move this case forward in the face of a statutory withdrawal of this Court's

jurisdiction by an intervening Act of Congress, cf. Peacock v. Thomas, 516 U.S. 349, 255 (1996)

(concluding that the "primary lawsuit must contain an independent basis for federal jurisdiction"

in order for the court to exercise jurisdiction over ancillary enforcement claims),[15] and raises very

real separation of powers concerns.[16]

---

[15] Furthermore, the Magistrate Judge's ruling on petitioners' request for relief pending resolution of the jurisdictional issue is inconsistent with the sense of the Court, expressed to counsel, to await anticipated guidance from the D.C. Circuit regarding the effect of the Detainee Treatment Act before deciding any pending motions.  The only reason respondents have not moved to dismiss this case in its entirety and have, instead, noted that a stay of a ruling on petitioners' request for relief would be appropriate pending resolution of the jurisdictional issues, is due to the sense of the Court conveyed to counsel.  See supra note 5.  Accordingly, even though respondents have thus far not moved to dismiss this case and continue to allow counsel for other properly represented detainees to visit Guantanamo pending a decision from the D.C. Circuit, such actions cannot be construed as a waiver or concession of jurisdiction, even if such a waiver were possible.  See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction).  A stay of a ruling by the Court on petitioners' request for relief pending resolution of the jurisdictional issues would have been appropriate, and for the same reason it would be appropriate for the Court now to vacate or stay the effect of the Magistrate Judge's ruling pending resolution of the jurisdictional issues.  But it is not appropriate for the Magistrate Judge or the Court to grant petitioners' counsel the relief sought without resolution of the jurisdictional issue.

[16] See also Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 890 (1961) ("The control of access to a military base is clearly within the constitutional powers granted to both Congress and the President"); Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (court notes in context of challenge to standing of next friend purporting to act on behalf of enemy combatant detainee that the standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves") (citation and internal quotations omitted).

For similar reasons, the Magistrate Judge's Order cannot legitimately be grounded in any authority of the Court under Judge Kollar-Kotelly's decision in Al Odah v United States, 346 F. Supp. 2d 1 (D.D.C. 2004), which the Magistrate Judge believed permitted the Court to craft procedures necessary to enforce a right to counsel to pursue a petition, see Mem. Order at 10-11. The basis of the Al Odah decision rested not on any absolute right to counsel, but on a court's discretionary, statutory authority in *habeas* cases to appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted.  See id. at 4-5, 7-8 (citing 18 U.S.C. § 3006A).  That authority under the *habeas* statute is no longer applicable given the investment of exclusive jurisdiction over this action in the Court of Appeals.  Further, Al Odah did not, as here, involve any issue as to whether a *habeas* case was properly pending before the Court, so as to support counsel's direct access to a detainee.  The case had been filed by family member next friends who had retained counsel, and respondents did not object to providing counsel access; merely the monitoring of counsel-detainee meetings was at issue.  See 346 F. Supp. 2d at 4-5 ("[T]he Court has confined its present inquiry to the attorney access issues that uniquely affect the three named Petitioners in this case.  Accordingly, the Court considers whether the Government can impose real time monitoring on the three Petitioners.").

The Magistrate Judge's Order also erroneously purports to find authority to order the requested relief in the fact that the Act provides detainees the opportunity to seek review in the D.C. Circuit of the validity of a Combatant Status Review Tribunal determination that the detainee is an enemy combatant and thus properly detainable.  See Mem. Order at 12, n.14. According to the Court, counsel would "presumably" represent petitioners in any such proceeding before the D.C. Circuit; thus, "the need to resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C. Circuit and the Supreme Court determine

- 18 -

that the DTA applies to those *habeas* cases currently pending in the District Court." Id.  That an

exclusive review proceeding before the D.C. Circuit is possible, however, does not authorize the

Court to act on petitioners' requested relief; to the contrary, it precludes the Court from acting on

the matter.  As explained above, the Act vests "exclusive" jurisdiction in the D.C. Circuit "to

determine the validity of any final decision of a Combatant Status Review Tribunal that an alien

is properly detained as an enemy combatant."  See Act § 1005(e)(1).  The Act also expressly

provides that exclusive review in the D.C. Circuit is applicable to pending cases.  Id. § 1005(h).

As the Court of Appeals explained in Telecommunications Research and Action Center v. FCC,

750 F.2d 70, 75, 78-79 (D.C. Cir. 1984), a request for relief in district court that might affect the

future, exclusive jurisdiction of the Court of Appeals is subject to the exclusive review of the

Court of Appeals.  Consequently, issues of counsel access, and the prerequisites for such access,

if any, are exclusive matters for the D.C. Circuit.  No authority can be found for the Magistrate

Judge's Order in the fact that an exclusive review mechanism is available for detainees in the

D.C. Circuit.  The Magistrate Judge's Order is contrary to the statutory withdrawal of this

Court's jurisdiction pursuant to the Detainee Treatment Act.

## II.    The Magistrate Judge's Order is Also Clearly Erroneous and Contrary to Law Because It Is Contrary To The Language of the Access Procedures And The Applicable History And Context of The Guantanamo Cases And Because It Results In a Regime Inconsistent With Jurisdictional Principles.

### A.    The Magistrate Judge's Interpretation of the Access Procedures Is Contrary to the Language of The Access Procedures and the History and Context of the Litigation, and Thus Is Clearly Erroneous.

Aside from lacking jurisdiction to order the requested relief, the Magistrate Judge acted in

a clearly erroneous fashion in rejecting respondents' position that the Access Procedures require

that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or

her authority to represent the detainee," and then, subsequent to direct access to the detainee being permitted, provide an additional, direct authorization of representation from the detainee on whose behalf the *habeas* petition was filed, "no later than then (10) days after the conclusion of a second visit with the detainee." See Access Procedures § III.C. The Access Procedures govern "for purposes of litigating the cases in which this Order [the Protective Order] is issued."

Id. § I. Consistent with that purpose, § III.C of the Access Procedures provides, in pertinent part:

1.    Prior to being permitted access to the detainee, counsel must provide DoD with a Notification of Representation. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

2.    Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee. The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee. Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

The Access Procedures thus impose, in a paragraph applicable to certain requirements that must be met "[p]rior to being permitted access to the detainee," § III.C.1, a requirement of some evidence of authority to represent the detainee. This evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees. Then, a separate paragraph of the Access Procedures, § III.C.2, requires counsel to submit final evidence of his or

her authority to represent the detainee after having the opportunity to meet with the detainee.[17]

Hence, the Access Procedures contemplate a two-layer requirement regarding counsel's authority

to bring and then maintain the lawsuit.

The Magistrate Judge interpreted § III.C.2, however, merely to refer to the timing of the

requirement imposed by the last sentence of § III.C.1. See Mem. Order at 6-7. The Magistrate

Judge's reading, however, fails to account for the fact that a proof of authorization requirement is

contained in a paragraph that begins, "Prior to being permitted access to the detainee . . . ."

Instead of giving credence to two separate paragraphs in § III.C containing authority of

representation requirements, the Magistrate Judge's reading of § III.C effectively, and

improperly, moves the last sentence of § III.C.1 to combine it into § III.C.2. This is inconsistent

with the structure of the two paragraphs, as well as with the fact that each of the paragraphs in

§ III.C refers to separate submission requirements.

Furthermore, respondents' reading of the Access Procedures is consistent with the history

and context of the Guantanamo *habeas* cases and the application of the Access Procedures in

those cases, while the Magistrate Judge's reading is inconsistent with that history, context, and

application. The Guantanamo detainee *habeas* cases pending when the Protective Order and

Access Procedures were negotiated and entered in the cases were uniformly next friend cases

brought by family member next friends. See In re Guantanamo Detainee Cases, 344 F. Supp. 2d

174 (D.D.C. 2004) (entering Protective Order on Nov. 8, 2004). The counsel access procedures

that served as the basis for the current Access Procedures were initially proposed by respondents

---

[17] Additional paragraphs in § III.C of the Access Procedures concern notification of withdrawal or termination of representation by counsel, Access Procedures § III.C.3, and certification of the source of funding for counsel in the representation, id. § III.C.4.

in July 2004. The procedures explicitly required, in what would become the current § III.C.1,

that "[p]rior to being permitted access to the detainee," in addition to a Notification of

Representation,

> the counsel must provide sufficient details regarding the circumstances of his/her
> retention to demonstrate the counsel's authority or standing to bring a habeas or
> other federal court action on the detainee's behalf.

See Response to Complaint in Accordance with Court's Order of July 25, 2004, Exhibit A, in Al

Odah v. United States, No. 02-CV-0828 (CKK) (dkt. no. 46) (copy attached for the Court's

convenience at Tab 1). In addition, in a paragraph § III.C.2, the procedures provided,

> After meeting with the detainee, counsel must provide DoD with an
> *Acknowledgement of Representation*. This document must be signed by the
> detainee and must specifically state that the detainee is being represented in
> habeas or other federal litigation by counsel named in the Acknowledgement.

Id. (emphasis and misspelling of "Acknowledgment" in original). Furthermore, it was expressly

contemplated and conveyed to the Court that once counsel demonstrated his or her authority "to

bring a habeas . . . action on the detainee's behalf," i.e., at the time through demonstration that

the case was an appropriate next friend case, the opportunity for access to the detainee would

allow, where appropriate, conversion of the next friend petition into a petition directly authorized

by the detainee. See, e.g., Tab 1 (Response to Complaint in Accordance with Court's Order of

July 25, 2004 in Al Odah) at p. 30 n.14 ("the access [to detainees] provided by the military will

allow counsel to meet with the detainees, and counsel may then wish to convert their next-friend

petition into a direct petition or otherwise amend their petition").

Subsequently, other aspects of the Protective Order and Access Procedures were the

subject of negotiations and litigation of certain issues before Senior Judge Green, who served as

Coordinating Judge in the cases at the time. This process culminated in a version of the access

procedures being proposed by one petitioner's counsel,[18] to which respondents objected in part.[19] Both versions proposed by the parties contained the versions of § III.C.1 and C.2 originally proposed by respondents, with the additional requirement that the "Acknowledgment of Representation" be provided "as soon as is practical," and the provisions were considered non-controversial, though there had been discussion between counsel for the parties regarding the number of visits with a detainee that counsel would be allowed once access was permitted to obtain any such direct authorization of representation from the detainee.  Thus, when Judge Green issued the Protective Order and Access Procedures in their current form, no change in contemplated operation of Access Procedures, i.e., access being conditioned on initial proof of authority to represent a detainee with the requirement that direct authorization be submitted "as soon as practical" thereafter (though in no event more than 10 days after a second visit, under the final version of the Access Procedures), was comprehended.

Indeed, the consistent practice of respondents throughout the litigation has been to require counsel to provide proof of some authority to represent a detainee, either through a next friend or directly, prior to counsel being permitted access to the detainee.  It was not even suspected that the language of § III.C.1 and C.2 might raise an issue until late last year when respondents began to confront various petitioners' counsel seeking access to detainees regarding counsel's authority

---

[18] See Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. A (Proposed Procedures for Counsel Access) (dkt. no. 33) (filed Oct. 22, 2004 in *Begg v. Bush*, No. 04-CV-1137 (RMC)) (copy attached for the Court's convenience at Tab 2).

[19] See Resps' Response to Nov. 1, 2004 Order Setting Deadline for Submission in Response to Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. 1 (Revised Procedures for Counsel Access) (filed Nov. 4, 2004 in *In re Guantanamo Detainee Cases*, Nos. 02-CV-0299, *et al.*) (copy attached for the Court's convenience at Tab 3).

to represent detainees they purported to represent, either directly or through improper (in

respondents' view) next friends.  It was at that time a reading of § III.C.1 and C.2 consistent with

the Magistrate Judge's reading in this case began to be cited by counsel resistant to providing

evidence of proof of their representation authority.

The Magistrate Judge has attempted to dismiss respondents' position as unsupportable

because in his view, the next friend device was merely a "legal fiction" that became "largely

irrelevant" because of the possibility that, in light of the notifications provided by DoD to

detainees of their ability to contact the Court and submit a petition directly and the opportunity

for visits between counsel and detainees in properly brought next friend cases, detainees might

directly submit or authorize a _habeas_ petition, such that the next friend issue becomes moot.  See

Mem. Order at 7-8; Adem, 2006 WL 751309 at *4, *10 n.29, *12.  The fact of the matter is,

however, that the next friend device has not been "irrelevant" or mere fiction in the Guantanamo

_habeas_ cases.  Indeed, _habeas_ counsel have sought and the Court has granted relief, such as

requiring advance notice of any transfer of the detainee from Guantanamo, in cases brought by

putative next friends prior to counsel visiting detainees, presumably based on the putative

standing of the next friends.  Moreover, the possibility that a next friend authorization might

become moot does not mean that the Access Procedures never contemplated a showing of

representation authority prior to access to a detainee being granted.  Indeed, because in a "next

friend" case, the detainee on whose behalf the case is brought "remains the real party in interest,"

see Whitmore, 495 U.S. at 163, it is that detainee's legitimate desires and wishes that control in

the litigation.  See also id. at 164 (cautioning against "intruders or uninvited meddlers" filing

lawsuits on behalf of unwitting strangers).  It is unremarkable that a next friend authorization

might become moot once direct access to the detainee on whose behalf a case is brought is

obtained; the likelihood that the detainee may express his desires with respect to a lawsuit

brought on his behalf certainly does not render the next friend device "irrelevant."

In sum, the Magistrate Judge's apparent view that respondents' reading of the Access

Procedures is contrary to the factual and procedural underpinnings of the Guantanamo cases is

wrong. Indeed, for these reasons explained above, the Magistrate Judge's reading of the Access

Procedures is inconsistent with the language of the Access Procedures, as well as with the history

and context of the Guantanamo *habeas* cases and the application of the Access Procedures in the

cases, and is clearly erroneous.[20]

> **B.     The Magistrate Judge's Interpretation of the Access Procedures Results In
> The Extra-Legal Assertion of Court Jurisdiction And Is Contrary To Law.**

As explained above, the Magistrate Judge's reading of the Access Procedures is that

counsel who purport to represent a detainee through a putative next friend or otherwise need not

provide any evidence of any authority to represent the detainee prior to being entitled to

privileged access to the detainee. Even if such a reading were possible divorced from

consideration of the history and context of the Guantanamo *habeas* cases, the reading creates a

scheme that is contrary to law, and it can and should be rejected for that reason alone. The

---

[20] Previously, in Adem, Judge Roberts rejected the history and context of the Access
Procedures as developed in the Guantanamo *habeas* case as being of any value in interpreting the
Access Procedures. See Adem, 2006 WL 1193853 at *6 (dkt. no. 42). However, the Access
Procedures were developed in *habeas* cases that were being coordinated pursuant to the order and
direction of the Court as a whole, including through a September 15, 2004 Resolution of the
Executive Session – coordination in which this Court participated at the time by transferring
then-pending Guantanamo cases to Judge Green for handling consistent with the Court's orders.
Furthermore, the Court in this case imported for use in this case the Access Procedures
developed under Judge Green. See Order (Oct. 11, 2005). It would be unreasonable in such
circumstances for the Court to interpret the Access Procedures inconsistent with that
development and long-standing practice, especially in light of the Detainee Treatment Act and
the previously expressed sense of the Court to defer action in the Guantanamo *habeas* cases
pending guidance from the Court of Appeals on the jurisdictional issue.

Magistrate Judge's interpretation of the Access Procedures essentially results in the creation of court jurisdiction in *habeas* actions that is contrary to the plain language of the *habeas* statute and requirements for standing under that statute. Section 2242 of the *habeas* statute requires that a *habeas* petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Thus, the law provides only two avenues by which a *habeas* petition may be properly brought: (1) the individual who is seeking *habeas* relief must sign and verify the petition, i.e., the petition must be directly authorized; or (2) the petition must be signed and verified by another person acting on that individual's behalf – a "next friend" – whom the Supreme Court has determined must satisfy certain requirements in order to properly serve in this capacity. See Whitmore, 495 U.S. at 163-64. The Whitmore requirements have not been determined to have been satisfied in this case; thus, the Magistrate Judge's Order in effect invents a new, third option for standing that is not found in the *habeas* statute or case law. Under the theory reflected in the Memorandum Order, a court may exercise jurisdiction over a case simply upon some person acting as a conduit and passing along to an attorney a purported desire for assistance of counsel by some other individual, without any demonstration of an attorney-client relationship between counsel and the person on whose behalf relief is sought or satisfaction of the "next friend" requirements established by the Supreme Court. See Mem. Order at 8 ("[T]he detainees who initiate a *habeas* petition on behalf of a fellow detainee generally do not seek to serve as a 'next friend' in the traditional sense, but are simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee.").[21] There is simply no basis in the law for such an approach.[22]

---

[21] Although the Magistrate Judge believed the "next friend" standing doctrine to be merely a "legal fiction" in the Guantanamo detainee *habeas* cases and largely irrelevant in these

The Magistrate Judge's Order attempts to justify the creation of this unprecedented "conduit" theory of establishing standing in *habeas* cases by citing certain concerns about the circumstances of detention at Guantanamo Bay which, in the Magistrate Judge's view, apparently warrant an extra-legal scheme for establishing jurisdiction in these *habeas* cases. Not only is the assessment reflected in the Memorandum Order of the factual circumstances involved often inaccurate, but the circumstances of detention at Guantanamo Bay in any event do not justify disregarding the plain language of the *habeas* statute and governing case law.

The Magistrate Judge incorrectly concluded that an analysis of whether proper *habeas* standing exists in this case may be avoided in favor of an extra-legal scheme for establishing jurisdiction because the notifications provided by the Department of Defense to detainees at Guantanamo Bay regarding their right to file a petition for *habeas* corpus allegedly caused some level of confusion among unnamed detainees. Specifically, the Magistrate Judge criticized the notifications as "fail[ing] to provide any explanation of what a petition for *habeas corpus* is or how a detainee would go about getting one," Mem. Order at 3 n.6, and informing the detainees that they can "ask a friend" to file a petition on their behalf without also advising them of the

_____

cases, see Mem. Order at 7-8, other Judges of the Court who have addressed the issue of a detainee's ability to seek *habeas* relief on another detainee's behalf have recognized that the Supreme Court's Whitmore requirements for next friend standing must be satisfied before the Court may exercise jurisdiction over the case. See, e.g., Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16); Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al. (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.).

22  Thus, even if respondents' reading of § III.C of the Access Procedures was not consistent with the plain language of § III.C, as the Magistrate Judge believed, respondents' application of the Access Procedures to require some demonstration of appropriate representation authority prior to providing access to the detainee "for purposes of litigating the case[] in which the . . . [Access Procedures were] issued," Access Procedures § I, is compelled by jurisdictional considerations.

jurisdictional requirements of "next friend" standing as articulated by the Supreme Court, see id. at 3. The Order cites no legal basis for these critiques. Moreover, the government cannot simply waive jurisdictional requirements mandated by the *habeas* statute and governing Supreme Court precedent by advising detainees that they may "ask a friend" to file a *habeas* petition on their behalf, nor was it the government's intent to do so. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction).

In any event, the record in this case establishes that the Department of Defense's notifications adequately informed detainees how they may challenge the legality of their detention and, as a result, scores of petitions have been filed on behalf of detainees at Guantanamo Bay. The notifications provided beginning in December 2004 notified each detainee at Guantanamo Bay that "you may challenge your detention in a United States court" and "[y]ou may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for writ of habeas corpus*." See Second Sweigart Declaration, Exs. A-C. The notifications further explained that detainees may "ask a friend or family member or a lawyer" to file a petition on their behalf, or they may do so themselves by writing to the United States District Court for the District of Columbia at an address provided on the notifications. See id. Thus, although the notifications may not have provided the detainees with a precise legal definition and explanation of a "petition for writ of *habeas corpus*," they clearly explained to the detainees that they may ask a United States judge to review whether they should be detained at Guantanamo Bay and provided them with options on how to do so. As a result of these notifications, 58 petitions for writ of *habeas corpus*, i.e., letters construed as petitions, have

- 28 -

already been filed by detainees writing directly to the Court.[23]  Further, other detainees have

directly authorized petitions by writing to lawyers already representing other detainees, and

scores of additional detainees have filed petitions through family members and friends who

arguably satisfy the Supreme Court's requirements for next friend standing.[24]  Given that

hundreds of detainees have legitimately sought to challenge the legality of their detention by

seeking *habeas* relief in federal court, the Magistrate Judge's conclusion that the notifications

were inherently misleading and insufficient is incorrect,[25] and in any event, does not justify

excusing petitioners from satisfying the necessary jurisdictional requirements in *habeas* cases.[26]

---

[23] As explained in the record, detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by the Department of Defense and through the International Committee for the Red Cross.  See Second Sweigart Declaration, Ex. D.  These systems were developed and operational prior to and independent of the Protective Order in this litigation.  See id.; see also, e.g., Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1160 (9th Cir. 2002) (noting, pre-Rasul, that Guantanamo detainees were able to send and receive mail and were permitted to communicate outside Guantanamo through the International Committee of the Red Cross).  Given that Guantanamo Bay is an overseas military base operating during a time of war, respondents acknowledge that mail may take some time to be transmitted to and from Guantanamo Bay through the United States Postal Service (which is beyond the control of the Department of Defense), however, the processing by the Department of Defense of incoming and outgoing detainee mail at Guantanamo Bay has consistently taken two weeks, on average.  See Second Sweigart Declaration, Ex. D.

[24] In addition, as explained supra, detainees who indicate to Guantanamo personnel that they desire a lawyer, are provided a form in their own language (or are read the form in their language if they are illiterate) to request a lawyer from the ABA.  See Second Sweigart Declaration, ¶ 7 & Ex. E.

[25] The Magistrate Judge characterized respondents' contention as an "unconscionable" and "unworkable" demand that detainees "identify a specific lawyer from among all the volunteer lawyers – most of whom are unknown to the detainee before a meeting . . . ."  See Mem. Order at 11.  That characterization is erroneous, however; as demonstrated above, respondents make no such demand, but rather have provided reasonable mechanisms, consistent with the jurisdictional requirements in *habeas* cases, for detainees to contact the Court or a source for counsel should they desire to do so.

[26] Of course, because the Magistrate Judge's Order purports to rest on the interpretation of operative language of the Access Procedures and does not resolve respondents' motion for an

- 29 -

See Whitmore, 495 U.S. at 155-56 ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").[27]

Furthermore, the prejudicial impact of the Magistrate Judge's interpretation of the Access Procedures is significant. Under the Magistrate Judge's interpretation, which if allowed to stand would be potentially applicable not only in this case but in numerous other Guantanamo cases in which respondents have challenged next friend standing or counsel have failed to present sufficient evidence of their authority to represent a detainee,[28] respondents would be required to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements. Indeed, this interpretation of the Access Procedures could permit virtually any attorney to file suit asserting that they represent a detainee and thereby require the government to provide them privileged access to the detainee. Even if counsel's ability to claim authority to represent a detainee were cabined by having to receive word of a detainee's desire for counsel through a purported "conduit" detainee, that arrangement could lead

---

order to show cause as to why the case should not be dismissed for lack of proper "next friend" standing, further proceedings on issues such as the adequacy of the notifications to detainees for purposes of considering respondents' challenge to next friend standing conceivably would be appropriate should the jurisdictional issues under the Detainee Treatment Act be resolved in favor of retention of district court jurisdiction over detainees' habeas challenges.

[27] As explained supra, Judge Kollar-Kotelly's opinion in Al Odah cannot be viewed somehow authorizing the Court to ignore jurisdictional standing requirements, if such a thing were even possible. The Al Odah case did not involve a situation in which a counsel's authority to act in the case was in question.

[28] Approximately 20 such cases currently exist including those in which respondents have challenged next friend standing.

to detainees effectively initiating *habeas* petitions on behalf of, with concomitant required counsel access to, any detainee they recall once having a conversation with that gave the "conduit" detainee the inkling that the other detainee might want a lawyer or might want to challenge his detention.[29]  The separation of powers concerns implicated in such an arrangement of compelled access to wartime detainees in a military detention facility are substantial.  Such an arrangement flies in the face of fundamental standing and jurisdictional concepts in the law of *habeas corpus*.

Accordingly, the Magistrate Judge's interpretation of the Access Procedures results in an extra-legal assertion of court jurisdiction and, thus, is clearly erroneous and contrary to law and should be set aside.

### III.    The Magistrate Judge's Order Should Be Stayed Pending Reconsideration.

The Court should immediately stay the Magistrate Judge's Order to the extent it requires action by respondents pending the Court's resolution of respondents' motion for reconsideration.[30]  Petitioners' counsel currently have a visit to Guantanamo Bay scheduled for July 16-23, 2006, and they have requested to meet with all of the detained petitioners in this case, including the four disputed petitioners.  Respondents, however, should not be required to provide direct, privileged access to a wartime detainee in a military detention facility by counsel merely

---

[29]  Indeed, the putative next friend in this case, Mr. Kiyemba, purports to act as next friend on behalf of approximately two dozen detainees, with a dearth of specifics as to why any particular detainee on Mr. Kiyemba's list is or was unable to avail himself of the means to access the Court and/or counsel provided by DoD.

[30]  A stay of resolution of petitioners' request for relief in this matter would be appropriate pending resolution of the effect of the Detainee Treatment Act on the pending *habeas* cases, including this one.  If such a course is taken, however, it is imperative that the Magistrate Judge's Order be stayed to preserve the status quo pending resolution of the Detainee Treatment Act issues.

purporting to represent the detainee, without an appropriate showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements, as is contemplated by the Magistrate Judge's Order, prior to resolution of this motion for reconsideration.  Aside from the significant jurisdictional issues that exist given the statutory withdrawal of the Court's jurisdiction in the Detainee Treatment Act of 2005 and otherwise, as well as the gravely serious issue of the construction of Access Procedures applicable in the Guantanamo cases, such access raises significant separation of powers concerns. See supra.  Those harms will be incurred in just a couple of weeks under the current visit request of counsel unless the Order is stayed.  Cf. Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (in deciding stay pending appeal, court balances: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay;" "stay may be granted with either a high probability of success and some injury, or vice versa").

Finally, any potential harm to petitioners would not outweigh the need for a stay. Congress has by statute now withdrawn the jurisdiction of this Court to proceed in the case. Maintenance of the status quo through a stay of the Order pending resolution of the motion for reconsideration would not outweigh the potential harms implicated by allowing the Order its full effect.

Accordingly, the Court should immediately stay the Magistrate Judge's Order.

## **CONCLUSION**

For the foregoing reasons, the Magistrate Judge's Order is contrary to law and clearly erroneous — it is clear from all the circumstances that a mistake has been committed.  The

Memorandum Order, accordingly, should be set aside.  Furthermore, the Order should be stayed

pending resolution of respondents' motion to reconsider the Order.

Dated: July 6, 2006                          Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             DOUGLAS N. LETTER
                                             Terrorism Litigation Counsel

                                                  /s/ Preeya M. Noronha
                                             _____
                                             JOSEPH H. HUNT (D.C. Bar No. 431134)
                                             VINCENT M. GARVEY (D.C. Bar No. 127191)
                                             TERRY M. HENRY
                                             JAMES J. SCHWARTZ
                                             PREEYA M. NORONHA
                                             ROBERT J. KATERBERG
                                             NICHOLAS J. PATTERSON
                                             ANDREW I. WARDEN
                                             EDWARD H. WHITE
                                             MARC A. PEREZ
                                             Attorneys
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Ave., N.W.
                                             Washington, DC  20530
                                             Tel:  (202) 514-4107
                                             Fax:  (202) 616-8470

                                             Attorneys for Respondents