**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE:** | Misc. No. 08-442 (TFH) |
| **GUANTANAMO BAY** | Civil Action Nos.: |
| **DETAINEE LITIGATION** | 02-CV-0828, 04-CV-1136, 04-CV-1164, |
| | 04-CV-1194, 04-CV-1254, 04-CV-1937, |
| | 04-CV-2022, 04-CV-2035, 04-CV-2046, |
| | 04-CV-2215, 05-CV-0023, 05-CV-0247, |
| | 05-CV-0270, 05-CV-0280, 05-CV-0329, |
| | 05-CV-0359, 05-CV-0392, 05-CV-0492, |
| | 05-CV-0520, 05-CV-0526, 05-CV-0569, |
| | 05-CV-0634, 05-CV-0748, 05-CV-0763, |
| | 05-CV-0764, 05-CV-0833, 05-CV-0877, |
| | 05-CV-0881, 05-CV-0883, 05-CV-0889, |
| | 05-CV-0892, 05-CV-0993, 05-CV-0994, |
| | 05-CV-0995, 05-CV-0998, 05-CV-0999, |
| | 05-CV-1048, 05-CV-1124, 05-CV-1189, |
| | 05-CV-1220, 05-CV-1236, 05-CV-1244, |
| | 05-CV-1347, 05-CV-1353, 05-CV-1429, |
| | 05-CV-1457, 05-CV-1458, 05-CV-1487, |
| | 05-CV-1490, 05-CV-1497, 05-CV-1504, |
| | 05-CV-1505, 05-CV-1506, 05-CV-1509, |
| | 05-CV-1555, 05-CV-1590, 05-CV-1592, |
| | 05-CV-1601, 05-CV-1602, 05-CV-1607, |
| | 05-CV-1623, 05-CV-1638, 05-CV-1639, |
| | 05-CV-1645, 05-CV-1646, 05-CV-1649, |
| | 05-CV-1678, 05-CV-1704, 05-CV-1725, |
| | 05-CV-1971, 05-CV-1983, 05-CV-2010, |
| | 05-CV-2083, 05-CV-2088, 05-CV-2104, |
| | 05-CV-2112, 05-CV-2185, 05-CV-2186, |
| | 05-CV-2199, 05-CV-2200, 05-CV-2249, |
| | 05-CV-2349, 05-CV-2367, 05-CV-2371, |
| | 05-CV-2378, 05-CV-2379, 05-CV-2380, |
| | 05-CV-2381, 05-CV-2384, 05-CV-2385, |
| | 05-CV-2386, 05-CV-2387, 05-CV-2398, |
| | 05-CV-2444, 05-CV-2477, 05-CV-2479, |
| | 06-CV-0618, 06-CV-1668, 06-CV-1674, |
| | 06-CV-1684, 06-CV-1688, 06-CV-1690, |
| | 06-CV-1691, 06-CV-1758, 06-CV-1759, |

06-CV-1761, 06-CV-1765, 06-CV-1766,
06-CV-1767, 07-CV-1710, 07-CV-2337,
07-CV-2338, 08-CV-0987, 08-CV-1085,
08-CV-1101, 08-CV-1104, 08-CV-1153,
08-CV-1185, 08-CV-1207, 08-CV-1221,
08-CV-1222, 08-CV-1223, 08-CV-1224,
08-CV-1227, 08-CV-1228, 08-CV-1229,
08-CV-1230, 08-CV-1231, 08-CV-1232,
08-CV-1233, 08-CV-1234, 08-CV-1235,
08-CV-1236, 08-CV-1237, 08-CV-1238,
08-CV-1310, 08-CV-1360, 08-CV-1440

### RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL AND TEMPORARY RELIEF FROM THE COURT'S JULY 11, 2008 SCHEDULING ORDER

Respondents hereby submit this consolidated reply memorandum in support of their Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order (Misc. No. 08-0442) (dkt. no. 317) ("Motion for Relief").

As explained in connection with its Motion for Relief, the Government underestimated the time it would take to accomplish the development and finalization of amended and original factual returns in the pending habeas cases. When it could not meet the benchmark it had initially represented to the Court as attainable, it requested relief from the Court in the form of an additional 30 days to complete the filing of the first 50 returns. In response, Petitioners urge the Court impose various sanctions, including defaults as to amended and original returns. At bottom, Petitioners seek to force the Government to choose between its duty to present, consistent with the currently governing legal landscape, the most appropriate case to ensure that those held as enemy combatants do not return to the fight and its duty to protect classified intelligence (and the assets used to acquire that intelligence) from improper disclosure that would endanger national security interests. Respondents respectfully request that the Court deny Petitioners' request for sanctions and grant Respondents' requested relief.

**ARGUMENT**

**A.  The Relief Requested Is Crucial to Fair and Just Adjudication of These Cases; Respondents Are Not Engaging in Inappropriate Delaying Tactics**

Petitioners, in arguing that the Government's difficulties in meeting the August 29

deadline were entirely within its control, repeatedly emphasize that Respondents "*decided* to rely

'extensively' on classified information that they did not previously use to justify Petitioners'

detention."  Pet. Opp. at 7.[1]  *See also id.* at 8, 9, and 11.  As detailed in Respondents' already-

filed motions to amend, however, there are compelling reasons why the Court should not deny

the Motion for Relief or otherwise impose a sanction that would have the effect of restricting the

Court's review of the detention of those the Government has deemed to be enemy combatants to

information compiled four years ago before the indisputably significant changes in the legal

landscape.[2]  The Government did not lightly decide to prepare new factual returns or to divert

intelligence specialists from the war effort so that they can review thousands of documents for

use in such returns.  Rather, it made the common-sense decision to put forth the best possible

case for detention in light of appropriate national security considerations, *see* Motion at 8-10, and

dedicated substantial resources to ensure that the record before the Court includes such

information in a form that reflects the current legal landscape.

Indeed, in seeking relief, respondents are not engaging in any inappropriate delaying

tactics.  When the Motion for Relief was filed, respondents had filed 22 amended or original

---

[1] Cites to "Pet. Opp." are to the omnibus Petitioners' Response to Respondents' Motion for Relief From Scheduling Order filed September 8, 2008.

[2] Petitioners have wrongfully interpreted the Governments' desire to present the strongest possible case for detention as an admission that the Government now finds the records of the Combatant Status Review Tribunal ("CSRT") "inadequate" to justify detention.  *See, e.g.*, Pet. Opp. at 9 n. 7.  The Government's development of new factual returns, however, recognizes that significant legal changes have occurred since the original CSRTs were done and the original returns were filed, and it admits of the possibility of factual changes regarding the cases against detainees.

factual returns, including six in cases before Judge Leon,[3] six in cases before Judge Sullivan (leaving one additional return in his cases due in September), and 10 in the coordinated proceedings before Judge Hogan.  Since that time, an additional 11 returns have been filed in these coordinated proceedings, including 8 in the last week.  Such a rolling production of factual returns is hardly indicative of inappropriate delay, but rather reflects, as explained in the Motion for Relief, that ramping up for the production of the factual returns took longer than anticipated and, as previewed in the Motion for Relief, that the Government expects to finish production of the first 50 returns in these coordinated proceedings on a rolling basis throughout September and hopes to achieve the expected rate of production each month thereafter.

Although the Government will endeavor to complete 50 factual returns per month, there is reason to doubt that Petitioners' counsel can respond, and the Court can adjudicate, cases at that pace.  For example, in the two weeks that have passed since the Government filed factual returns in the first 10 coordinated cases, only one petitioner has filed a traverse.  Thus, although the Government intends to act expeditiously in these cases, the short delay necessary to address the national security issues presented through the use of classified evidence will cause little practical delay in the resolution of these cases.

**B.  Petitioners' Other Criticisms Are Based on Mischaracterizations and Misunderstanding**

Petitioners' arguments that the government could have dedicated more resources to the production of factual returns and that such production need not be as resource-intensive as described in the Motion for Relief demonstrate their cavalier attitude toward the protection of

---

[3] On September 9, 2008, Respondents requested that Judge Leon also delay his factual return deadlines for the remainder of his cases by 30 days.  *See, e.g.*, Respondents' Motion for Partial and Temporary Relief from the Court's July 30, 2008 Scheduling Order, *Sliti v. Bush*, Civil Action No. 05-cv-0429.

classified information, born of an overly simplified view of the risks and methods associated

with dissemination of such information.  Specifically, Petitioners demonstrate a lack of

understanding of how the necessary use of classified information in returns constrains the

development of the resources available to the Government for producing factual returns and of

the importance to the national interest of the multiple levels of review associated with producing

such returns.

Petitioners' statements that the Government has "literally *thousands* of lawyers available

to them" and that Respondents "easily could have secured 250 lawyers from the U.S. Attorneys'

offices around the country, from DOD, and from the Civil Division," Pet. Opp. at 7-8, are

misinformed.  First, such statements ignore the challenges, discussed extensively in the Motion

for Relief, arising from the use of classified information.  Even if the Government could wave a

magic wand and transfer an additional 250 attorneys to this effort, attorneys cannot significantly

contribute to the creation of factual returns until they receive necessary security clearances and

training and until secure work space – complete with secure copiers, computers, and other

infrastructure – is available.  Motion, Ex. C, Katsas Dec'l., ¶¶ 5-6.  Also, Petitioners' bald

assertions about the resources available to the Government ignore the need not only for attorneys

to develop factual returns, but for intelligence personnel to review and assess the implications of

the use of such materials in court and determine whether such use would damage national

security interests.  *See id.*, Ex. B, Dell'Orto Dec'l., ¶ 5; *see also id.*, Ex. D, Hayden Dec'l, ¶ 13.

Second, Petitioners blatantly mischaracterize the efforts undertaken to assemble the

Government resources and draft the factual returns.  For example, petitioners' assertion that

"DOJ and DOD waited until July to assemble staff and resources," Pet. Opp. at 8, is simply

wrong.  It is true that both "DoJ and DoD were assembling staff and resources over the month of

July."  Motion at 3.  That is not, however, when the departments *began* assembling their team.

*See, e.g.,* Motion, Ex. C, Katsas Dec'l., ¶¶ 5 ("After *Boumediene* was decided, DoJ moved

quickly to secure" staff and resources.).  Further, Petitioners' characterization of DoD's review

of 1,900 classified documents in a month as a "snail's pace" ignores what was clearly laid out in

the paragraphs they cite to support this mischaracterization:  Petitioners incorrectly assign the

clearance review of these 1,900 documents to the 30 DoD attorneys involved in assembling and

winnowing information for use in drafting proposed factual returns and submitting materials

cited in those drafts for intelligence equity review.  Pet. Opp. at 8, n. 5.  In fact, DoD created a

team of intelligence specialists to coordinate its clearance review.  *Id.*, Ex. B, Dell'Orto Dec'l., ¶

6-7.  Further, petitioners dismiss the significant scope of review related to those 1,900 documents

and the fact that reviewing those documents was not the only task intelligence personnel have

performed in this undertaking.  *See, e.g.*, *id.*, Ex. B, Dell'Orto Dec'l., ¶ 5 (listing many of the

issues that must be addressed for each document reviewed, including classification level and the

potential harm to intelligence sources that may arise from the use and potential release of the

information in the habeas context), ¶ 6 (listing ten DoD organizations with whom the team had to

coordinate review), ¶ 7 (stating that intelligence personnel reviewed 1,900 documents "*in*

*addition to* expending a significant amount of time preparing supporting materials and

coordinating them for use in the litigation" (emphasis added)).

Petitioners also exhibit a fundamental misunderstanding of the restrictions on

dissemination of classified information.  For example, they assert that special CIA review should

not be necessary because the Court and counsel "already have the security clearance required for

access to this information."  Pet. Opp. at 10.  This assertion seems to be based on the mistaken

assumption that all that is required to have access to classified information is the correct security

clearance.  However, as set forth in the public and *ex parte, in camera* declarations of Director

Hayden, the agencies that "own" classified information must make "need to know"

determinations and consider whether use of their classified information is otherwise appropriate

in this context, bearing in mind that disclosure to Petitioner's counsel can mean disclosure,

pursuant to the protective order, with yet additional counsel in other cases.  This leads to

heightened sensitivities over such potentially broad disclosures.  Even Petitioner's own declarant

acknowledges that there are circumstances in which mere possession of the proper clearance will

not entitle a recipient to see classified information.  *See* Pet. Opp., Ex. 1, Kaplan Dec'l., ¶¶ 7-8.[4]

The CIA review is designed in part to identify information included in the factual returns

that cannot be disseminated outside the Executive Branch and to ensure use of information in the

factual returns is consistent with this and other intelligence-related interests.  Motion, Ex. D,

Hayden Dec'l, ¶ 13.  Petitioners seek to substitute their own assessment of the national security

risks associated with release of classified information for that of the public officials charged with

protecting intelligence sources and methods from unauthorized disclosure, *id.* at ¶ 15.  Such an

approach in improper, however.  *See Dep't of the Navy v. Egan*, 484 U.S. 518, 529 (1988) ("the

protection of classified information must be committed to the broad discretion of the agency

responsible, and this must include broad discretion to determine who may have access to it");

---

[4] Petitioners' declarant asserts that the four CSRT records that he has seen contain no
classified information involving additional distribution restrictions or requiring a Top Secret
Clearance, and thus may be distributed to anyone with a Secret clearance and a need to know.
Pet. Opp., Ex. 1, Kaplan Dec'l., ¶ 10.  This fact is not relevant to whether information not found
in the CSRT records requires intelligence agency review to determine if it is subject to
restrictions to which the CSRT records themselves may not be.  Petitioners' assertion that
because they have been trusted with CSRT record information in the past, they are trustworthy to
receive the information the CIA is currently reviewing likewise ignores the fact that different
classified information may be subject to different restrictions on dissemination in light of unique
interests that may be involved.  *See* Motion, Ex. D, Hayden Dec'l, ¶ 13.

*CIA v. Sims*, 471 U.S. 159, 176 (1985) ("An intelligence source will 'not be concerned with the underlying rationale for disclosure of' his cooperation if it was secured 'under assurances of confidentiality.'"); *Center for National Security Studies, et al. v. U.S. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003) (courts should not second-guess Executive's judgment in the area of national security). The Court, therefore, should look to Director Hayden's *in camera*, *ex parte* declaration, rather than the speculation of Petitioners, if it needs additional information regarding the dangers that could arise from inadequate intelligence agency review of the factual returns.

Finally, Petitioners' comparison of the current situation to the preparation of factual returns in 2004 does not support their contention that the Government could, if only it would, file factual returns more quickly. As described by the Petitioners, on August 31, 2004, the Government proposed (and the Court adopted) a schedule for its filing of factual returns. Pet. Opp. at 9, n. 8. By October 29, 2004, the Government had filed more than 50 returns. *Id.* Thus, in 2004, it took about two months (not six weeks as Petitioners claim) for the Government to file more than 50 factual returns, each of which consisted entirely of a CSRT record prepared through an administrative process that began prior to August 31, 2004. This Court issued its scheduling order on July 11, 2008, and the Government is now requesting until September 30, or a little more than two and a half months total, to file the first 50 factual returns, the preparation of which has involved a significantly different process resulting in returns different from the CSRT records.

Thus, Petitioners' statements about the availability of resources the government could have transferred to these cases and the necessity of the efforts it undertook to file factual returns rest on fundamental mischaracterizations and misunderstandings regarding the resources, risks

and interests associated with dealing with classified information necessary to appropriate

resolution of these cases on the merits.

### C. Procedural Shortcomings do not Warrant Striking the Motion for Relief

The Government acknowledges that it failed to confer with the scores of Petitioners'

counsel involved in these cases as contemplated by Local Civil Rule 7(m). In the rush of

attempting to meet the aggressive schedule and the late-blooming realization that it would not be

able to do so, the Government found itself drafting its Motion for Relief on an expedited basis.

The Government did not even know until late in the day on August 29 which returns it would be

able to file and which it could not file. In these circumstances, Respondents' counsel failed to

attempt to confer.[5] Respondents apologize for this failure.

Respectfully, however, and without minimizing the importance of the rule, striking the

Motion for Relief is not warranted. This Court has, in the past, addressed the merits of

nondispositive motions filed without conferring. For example, in *Niedermeier v. Office of*

---

[5] These same factors led the Government to file its motion just before the expiration of
the August 29 deadline. Petitioners' argue that the lateness of the motion justifies striking it.
The decisions Petitioners cite to support this argument miss the point. In the first, Justice
Rehnquist requested an explanation for counsels' waiting to file a petition for writ of habeas
corpus only four days before a defendant's scheduled execution and more than forty days after
the Supreme Court denied a petition for certiorari. *Evans v. Bennett*, 440 U.S. 1301, 1308 (1979)
(Rehnquist, Circuit Justice). The "hydraulic pressure" created by a pending execution, *id.*, and
defendant's failure to file anything for forty days are quite different from the situation here,
where there is no irreversible external event such as an execution looming over the proceedings
and where the Government did all it could by the deadline, openly requested an extension, and
has since continued to file factual returns on a rolling basis.

The other two cases Petitioners cite regarding so-called "self-help" motions actually
decry the filing of *substantive* motions in lieu of briefs instead of openly requesting extensions of
time as the Government has done here. *Ramos v. Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004)
(addressing a motion to transfer filed in lieu of a brief where no extension of time had been
requested); *United State v. Lloyd*, 398 F.3d 978, 980 (7th Cir. 2005) (addressing a motion to
dismiss in similar circumstances). The Government does not dispute that it would have been
better to file its motion for relief earlier. Unfortunately, the same factors that created the need to
request relief at all also created the need to file that request at the last minute.

*Baucus*, the Court cited "the general judicial preference for resolving motions on their merits

rather than dismissing them on technicalities, the fact that this will be plaintiff's final opportunity

to argue the merits of her case to this Court, and the desire to avoid prejudicing litigants for their

counsel's errors" as reasons for its decision to address a motion's merits despite the failure of

counsel to confer.  153 F.Supp.2d 23, 27 (D.D.C. 2001.) (Hogan, C.J.).  With respect to those

petitions for which the Government has not yet filed returns, granting sanctions such as

Petitioners request might prevent resolution of some of those petitions on the merits, and, in any

event, would prevent the appropriate resolution of some of those petitions in light of the now-

changed legal landscape.  As discussed above, the Government's amended and original returns

are needed to ensure the existence of the full and fair record critical to the adjudication of the

merits of the respective petitions.  Petitioners, in asking the court to show no leniency towards

Respondents, rightly point out that "so much is at stake" here.  Pet. Opp. at 4-5.  It is precisely

because so much is at stake that reaching the merits of the Motion for Relief and, ultimately, the

merits of Respondents' motions to amend the factual returns, is critical.[6]

* * *

Petitioners urge the Court to make the Respondents "pay a price for violating its

deadlines."  Pet. Opp. at 11.  That price, apparently, is to force the Government to choose

---

[6] Petitioners cite *Gray Panthers v. Schweiker*, 716 F.2d 23 (D.C. Cir. 1983).  That decision noted that the duty "to inform the courts of outside developments that might affect the outcome of litigation" may be higher for government counsel because "their client is not only the agency they represent but also the public at large."  *Id*. at 33.  The court compared this higher duty with a government lawyer's "responsibility to seek justice and to develop a full and fair record."  *Id.* (quoting Model Code of Professional Responsibility, EC 7-14 (1981)).  That is exactly what Respondents' Motion for Relief seeks to accomplish.  Respondents respectfully request that the Court not hinder the Government from performing this higher duty based on a failure to confer with scores of Petitioners' counsel on the motion.

between following procedures designed to appropriately safeguard classified information from

disclosure that will harm national security interests and making its best possible case in the

circumstances for the continued detention of enemy combatants to prevent their return to the

battlefield.  Petitioners seek to prevent the Court from considering late-filed amended returns and

to allow the Government only seven days to file original returns on pain of default or evidentiary

sanctions.[7]  Imposing such sanctions because the Government was overly optimistic in its

estimates of how long it would take to ramp up production of returns would not force

Respondents alone to pay the price.  It would force the American people to shoulder the burden,

either in the form of increased risk of the erroneous release of individuals whom the government

has determined are enemies of the United States, or in the form of reckless and inappropriate

dissemination of classified information without careful review and vetting by the intelligence

agencies charged with protecting American interests.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Motion for Relief,

Respondents respectfully request that the Court modify its July 11, 2008 scheduling order to

allow them an additional 30 days to file factual returns in a manner consistent with their national

security obligations.[8]

---

[7] Petitioners clearly unwarranted request for unspecified monetary sanctions raises several issues, such as sovereign immunity, that Petitioners (and therefore Respondents) do not address.  Respondents respectfully request an opportunity to address those issues should the Court consider imposing monetary sanctions.

[8] Respondents further request that the Court clarify the provisions of the scheduling order governing the processing of factual returns for petitioners who have been approved by DoD for transfer or release from Guantanamo.  *See* July 11 Scheduling Order ¶ 2.E.

Dated:  September 15, 2008        Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General


   /s/  Robert J. Prince
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL AHERN
ROBERT J. PRINCE (D.C. Bar No. 975545)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107

Attorneys for Respondents