UNCLASSIFIED

Version 22 Jul 2013

## MEMORANDUM OF UNDERSTANDING GOVERNING PRIVATE COUNSEL REPRESENTATION OF DETAINEES IN PERIODIC REVIEW PROCEEDINGS PURSUANT TO EXECUTIVE ORDER 13567

### 1. Background

    a.   Executive Order (EO) 13567 establishes a policy and process to review, on a periodic basis, the continued discretionary exercise of existing detention authority over detainees held at United States Naval Station Guantanamo Bay, Cuba (GTMO) pursuant to the Authorization for Use of Military Force (P.L. 107-40), utilizing a Periodic Review Board (PRB). In accordance with Section 3 of EO 13567, the Department of Defense (DoD) has issued Directive-Type Memorandum (DTM) 12-005, Implementing Guidelines for Periodic Review of Detainees Held at Guantanamo Bay per Executive Order 13567 (2012) (Implementing Guidelines) to facilitate the administration of the periodic review process. The Periodic Review Secretariat (PRS) performs all administrative functions for the PRB.

    b.   EO 13567 states that, in addition to a Government-provided personal representative (PR), detainees "may be assisted in proceedings before the PRB by private counsel" (PC). PC communications and visitation with detainees eligible for periodic review of their detention under EO 13567 require special precautions to maintain order, safety, and security within the Joint Task Force-Guantanamo (JTF-GTMO) detention facilities, and to protect the interests of national security. In addition, the storage, handling, and control of classified documents and information that PC create or obtain as a result of PC-detainee communication require special security precautions, and access to such information requires a security clearance and a "need-to-know." The storage, handling, and control of other information defined by Department of Defense Manual 5200.01, Volume 4 (February 24, 2012) (*see also* Exec. Order No. 13556, 3 C.F.R. 68675 (2011)) as controlled unclassified information (CUI) also requires special precautions in order to protect the security of the United States and other significant interests.

    c.   Accordingly, in the interests of national security, and pursuant to the authority conferred on the Secretary of Defense by Section 3 of EO 13567, this Memorandum of Understanding (MOU) sets forth the terms and conditions for PC access to the detainee-client for purposes of assistance in PRB proceedings, subject to the detainee-client's authorization of legal representation (as defined in the MOU) by that PC. PC who have previously represented (or currently represent) the detainee-client in military commission and/or habeas corpus proceedings are still required to execute this MOU and abide by its terms in conjunction with PC's representation of the detainee-client in matters related to his PRB proceedings. Entering into this MOU will not constitute or be construed as a waiver of any legally enforceable rights or privileges, including those conferred by applicable military commission and/or habeas corpus protective orders. To the extent any apparent conflicts arise between PC's obligations under this MOU and PC's

1

UNCLASSIFIED

**UNCLASSIFIED**

Version 22 Jul 2013

obligations under a military commission and/or habeas corpus protective order, the PC must advise the PRS Legal Advisor and seek further clarification.

d.  The MOU establishes access and communication procedures that must be followed by detainee-clients and their PC, as well as the requirements for those PCs to receive access to classified or potentially classified information or documents or controlled unclassified information (CUI), as defined in this MOU, for purposes of providing assistance to detainee-clients in PRB proceedings.  It is critical that those authorized to receive classified and CUI under this MOU not divulge this information to anyone, except in conformity with the terms of this MOU, without prior written authorization from the original classification authority.

e.  Nothing in this MOU, or the terms and conditions herein, is intended to create any legally enforceable rights for the PC, PC staff, PRs, translators or detainees.  Any disputes regarding the applicability, interpretation, enforcement, compliance with or violations of this MOU shall be resolved by the PRS Director, in consultation with the PRS Legal Advisor and DoD OGC.  This MOU may be amended at the discretion of the PRS Director; in the case of such amendment, PC's continued access to the detainee-client for purposes of assistance in PRB proceedings shall be conditioned on PC's agreement to and compliance with the amended MOU.

2.  **Purpose and Scope of PC Access**

a.  To be eligible for access under this MOU, the PC and the detainee-client must intend to establish an attorney-client relationship for purposes of legal representation related to the detainee-client's PRB proceedings.  The PC must be specifically authorized by the detainee-client to represent him in the PRB process.  A previous authorization to represent the detainee-client in habeas corpus proceedings will not be sufficient for PRB purposes.

b.  By entering into this MOU, the PC understands and acknowledges that access to the detainee-client pursuant to this MOU is for the purpose of assisting the detainee-client in proceedings before the PRB.

3.  **Definitions**

a.  **Detainee-client:**  The term "detainee-client" for purposes of this MOU is defined as an individual detained at GTMO who is eligible for the PRB process.

b.  **Private Counsel:**  The term "Private Counsel (PC)" as used in this MOU is defined as an attorney who (1) meets the criteria in Attachment 3, paragraph 5.g of the Implementing Guidelines; and (2) has received authorization from the detainee-client to assist the detainee-client in proceedings before the PRB.  PC are responsible for advising their staff, employees, detainee-clients and any other necessary party of this MOU's contents as necessary and appropriate to ensure

2

**UNCLASSIFIED**

UNCLASSIFIED

Version 22 Jul 2013

compliance with these procedures.  Detainee-clients are limited to assistance from one PC at the PRB hearing.

c. **Private Counsel Staff:**  PC is permitted to obtain clearance and "need-to-know" access to classified and controlled unclassified materials associated with the PRB process for two additional individuals to provide support with the work associated with assisting the detainee-client in the PRB process.  Staff can be an attorney, interpreter, translator, paralegal or investigator employed or engaged by PC.

d. **Privilege Team:**  A team comprised, for the purposes described herein, of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, shall not take part in, a Combatant Status Review Tribunal, Administrative Review Board, PRB, military commission proceedings, or habeas corpus proceedings involving the detainee-client.  If required, the Privilege Team may include interpreters/translators, provided that such personnel meet these same criteria.

e. **Documents/Information:** As used in this MOU, the words "documents" and "information" include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming copies and non-conforming copies, whether different from the original by reason of notation made on such copies or otherwise, and further include, but are not limited to:

(1)  Papers, correspondence, memoranda, notes, letters, reports, summaries, photographs, maps, charts, graphs, interoffice and intra-office communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, facsimiles, invoices, worksheets, and drafts, alterations, modifications, changes, and amendments of any kind to the foregoing;

(2)  Graphic or oral records or representations of any kind, including, but not limited to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound recordings of any kind, and motion pictures;

(3)  Electronic, mechanical or electric records of any kind, including, but not limited to, tapes, cassettes, disks, recordings, electronic mail, films, typewriter ribbons, word processing or other computer tapes or disks, and all manner of electronic data processing storage; and

(4)  Information acquired orally.

f. The terms "**classified national security information and/or documents,**" "**classified information**" and "**classified documents**" mean:

3

UNCLASSIFIED

Version 22 Jul 2013

      (1) Any classified document or information that was classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including EO 13526, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)," or any classified information contained in such document;

      (2) Any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that was derived from United States Government information that was classified, regardless of whether such document or information has subsequently been classified by the Government pursuant to Executive Order, including EO 13526, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)";

      (3) Verbal or non-documentary classified information known to detainee-clients or PC.

      (4) Any document or information as to which detainee-clients or PC were notified orally or in writing that such document or information contains classified information.

      (5) All classified documents, and information contained therein, shall remain classified unless the documents bear a clear indication that they were declassified by the agency or department that is the original classification authority of the document or the information contained therein.

g. The term "controlled unclassified information (CUI)" includes any unclassified information that requires safeguarding or dissemination controls, pursuant to and consistent with applicable law, regulations, and Government-wide policies (*e.g.*, "FOR OFFICIAL USE ONLY", "LAW ENFORCEMENT SENSITIVE"). *See* Department of Defense Manual 5200.01, Volume 4 (February 24, 2012); *see also* Exec. Order No. 13556, 3 C.F.R. 68675 (2011).

h. "Access to classified information" or "access to CUI" means having access to, reviewing, reading, learning, or otherwise coming to know in any manner any classified information or controlled unclassified information.

i. Contraband:  Contraband is not permitted in JTF-GTMO and all visitors are subject to search upon arrival and departure.  Contraband is defined as any physical item or prohibited information that the Commander, JTF-GTMO, or his designee, has deemed to be impermissible or inappropriate for a detainee-client to possess, be informed of (orally or in writing), or view, or any physical item which is prohibited from transmission to a detainee without prior authorization by the Commander, JTF-GTMO, or his designee.

UNCLASSIFIED

Version 22 Jul 2013

(1) Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt.  Contraband also includes, but is not limited to, money, stamps, balloons, playing cards, and cigarettes. Contraband also includes items that can be fashioned into weapons, such as paperclips, metal spiral-bound notebooks, and staples.

(2) Photography or recording of any type of any JTF-GTMO facility or area is prohibited without the prior approval of the Commander, JTF-GTMO. No electronic communication or recording devices are permitted inside JTF-GTMO facilities.  This includes all recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment. Should any of these devices be taken into a prohibited area, the device must be surrendered to JTF-GTMO staff and purged of all information.

(3) Contraband also includes information relating to security procedures at JTF-GTMO, including names of United States Government personnel and the layout of camp facilities; and the following, unless such information is directly related to PC's representation of that detainee-client in the PRB process:  any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests (or the results of such activities, by any nation or agency), current political events in any country, or the status of other detainees.

4. <u>**General Requirements for Access to Detainee - Clients and Classified/CUI Information**</u>

    a. **Security Clearance and Need-to-Know**

(1)  EO 13526, Section 4.1(a)(1)-(3), provides that a person may have access to classified information provided that (a) a favorable determination of eligibility for access has been made by an agency head or the agency head's designee; (b) the person has signed an approved nondisclosure agreement; and (c) the person has a "need-to-know" the information.  Accordingly, prior to PC's receiving access to the detainee-client or to classified information:

(a) PC must hold and maintain a valid, current United States security clearance at the SECRET level following a favorable determination of eligibility for access by an agency head or the agency head's designee;

(b) PC must sign an approved nondisclosure agreement; and

UNCLASSIFIED

Version 22 Jul 2013

    (c) Appropriate government agencies, in coordination with the government agency that issued the security clearance for the PC, must determine that the PC has a "need-to-know" the classified information that the PC will have access to under this MOU.

(2)  PC must immediately inform the PRS of any change in the status of their security clearance.

b. **Verification of Detainee-Client Request for PRB Representation**

(1)   Prior to participating in the PRB process, PC must provide the PRS with a evidence of authority to represent the detainee-client in PRB proceedings by submitting either the PC Authorization Form signed by the detainee-client stating he has authorized the PC to assist him in proceedings before the PRB, or a sworn declaration signed by PC stating the detainee-client has authorized PC to assist him in proceedings before the PRB.

    (a)    In the event PC has represented the detainee-client in other proceedings (such as habeas corpus litigation or a military commissions case), PC will have the opportunity to visit with the detainee-client twice in order to obtain authorization to assist the detainee-client in PRB proceedings.

    (b)    In the event PC has not previously represented the detainee-client in other proceedings (such as habeas litigation or a commissions case), PC shall submit to the PRS a Notice of Representation in accordance with the Private Counsel Procedures, Attachment B, and a request to visit with the detainee-client for the purpose of obtaining authorization to assist him in the PRB proceeding.   The Notice will include information available which shows the detainee-client's desire to have PC's assistance in the PRB proceedings.  Failure to include information sufficient in the judgment of the PRS demonstrating the detainee-client's desire to have the PC's assistance in the PRB proceeding will result in denial of the visit request. The request will also include PC's licensing information, business and email addresses, and phone number.  PC can request up to two visits to obtain authorization to assist.

(2)   PC shall provide evidence of authority to represent the detainee-client in proceedings before the PRB, as required in paragraph 4.b.(1), as soon as practicable, but in any event, not later than five days after the conclusion of the second approved visit with the detainee-client.

(3)   All requests for exceptions to these requirements due to extraordinary circumstances will be submitted to the PRS for consideration.

6

UNCLASSIFIED

Version 22 Jul 2013

    (4)  PC must promptly advise the PRS in the event the detainee-client withdraws such authorization.

c. **Acknowledgment of and Compliance with the Terms of the MOU**

    (1)  Prior to receiving access to a detainee-client or to classified information or CUI, PC must agree to comply fully with the terms of this MOU, which includes the terms of the Periodic Review Secretariat Private Counsel Procedures, Attachment B.

    (2)  To document such agreement, PC shall execute the Affirmation and Acknowledgment Regarding Access to Classified National Security Information (Attachment A), and provide the executed original of Attachment A, with a copy of the MOU appended, to the PRS.

    (3)  PC will fully abide by the requirements of this MOU.   Even if PC seek an exception to or modification of the terms of this MOU, PC may not knowingly disregard an obligation imposed by this MOU until such time, if any, that the terms of the MOU are modified or revoked by the Government.

d. **Funding of PC Representation and ABA Model Rule 1.8(f)**

    (1)  Prior to being provided access to the detainee-client or to classified information or CUI under the terms of this MOU, PC must provide the PRS with a signed representation stating that:

        (a)  To the best of PC's knowledge after reasonable inquiry, payments to PC of any fees or reimbursement of expenses for assistance provided to the detainee-client in proceedings before the PRB are not (i) made with funds that are the product of terrorist activities; or (ii) funded directly or indirectly by persons or entities PC believes or has reason to believe are connected to terrorism, including "Specially Designated Global Terrorists," identified pursuant to EO 13224 (September 23, 2001) or EO 12947 (January 23, 1995); and

        (b)  PC is in compliance with ABA Model Rule 1.8(f).

5. **Termination of PC's Representation**

    a.  If PC's representation of a detainee-client is terminated or there are reasonable grounds to question whether the representation remains authorized, the PRS Director, in consultation with the PRS SJA and DoD Office of the General Counsel, shall have the discretion to terminate PC's access pursuant to this MOU.

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

b.  If PC withdraws from the representation of a detainee-client, or if representation is otherwise terminated, PC shall inform the PRS immediately of that change in circumstances.

c.  The termination of access provided under the terms of this MOU shall not relieve any PC or PC staff who were afforded access to classified information or CUI of their obligations under this MOU, the acknowledgment executed in connection with this MOU, and applicable law, regarding disclosure of classified information or CUI.

6.  **Penalties for Failure to Comply with the MOU, Including the Unauthorized Disclosure of Classified Information or Controlled Unclassified Information (CUI)**

a.  In executing Attachment A, PC understand and acknowledge that access to or communication with the detainee-client, and/or access to classified information or CUI, pursuant to this MOU, is subject to the authority of the Director of the PRS, in consultation with relevant government officials.  Failure to comply with the terms of this MOU (except insofar as they may be modified or revoked by the Government) may result in suspension or termination, for some or all purposes, of PC's access to GTMO, of PC's access to the detainee-client, of PC's access to classified information and CUI, and/or of PC's security clearance.

b.  An "unauthorized disclosure" of classified information or CUI means any knowing, willful, or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information or CUI in an unauthorized manner or to an unauthorized recipient.  PC are on notice that such unauthorized disclosures could cause damage to the national security of the United States, may be used to the advantage of an adversary of the United States or against the interests of the United States, and/or could risk the security of United States Government personnel and facilities and other significant government interests.  Any unauthorized disclosure of classified information may constitute a violation of United States criminal laws.

c.  Any violation of the terms of this MOU shall be immediately brought to the attention of the appropriate authorities within DoD and other government agencies and may result in civil and criminal liability and possible referral for criminal prosecution (*See, e.g.*, EO 13526), as well as revocation of PC security clearance and termination of access to the detainee under this MOU.

7.  **Use of the PRS Secure Facility**

a.  A Secure Facility in the Washington, D.C. area will be made available for the use of PC and PR for the purpose of storing and accessing classified information and CUI obtained or used in the course of providing assistance to the detainee-client in

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

proceedings before the PRB.  In addition, there are secure spaces available at JTF-GTMO which will be available to PR and PC for work on PRB matters.

b.   The PRS will designate personnel as Facility Security Officers ("FSO") to manage the facility.  Additional guidance on the use of this facility will be provided to PC.

c.   All classified information obtained or created by PC in the course of providing continued legal representation to the detainee-client under this MOU shall be stored,

maintained, and used only in the PRS Secure Facility, except as otherwise expressly provided herein or authorized by the Government.

d.   The FSO's shall not reveal to any person the content of any conversations he or she may hear made by, or among PC, nor reveal the nature of the documents being reviewed by them or the work being generated by them, except as necessary to report violations of the terms of this MOU to the PRS Director or to carry out their duties pursuant to this MOU. Additionally, the presence of the FSO shall not be construed to waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections.

**8.  Access to and Handling of Classified Information**

a. Pursuant to this MOU, PC are likely to receive access to classified information, including, but not limited to, observations about the operations and facilities at JTF-GTMO and oral and written communications with the detainee-client which are treated as presumptively classified at the SECRET level.

b. Without specific written authorization from the United States Government, no PC shall have access to any classified information unless that person has complied with the requirements of this MOU and provided an executed original of Attachment A to the PRS.  Such compliance is a condition precedent to PC having access to classified information for the purposes of assisting the detainee-client in proceedings before the PRB.

c. This classified information shall be used only for purposes directly related to assisting the detainee-client in proceedings before the PRB, and not for any litigation or other proceeding, except by leave of the DoD or the appropriate classification authority.  Photocopies of documents containing such information shall be made only to the extent necessary to facilitate a permitted use hereunder.

d. The PRS shall provide security arrangements necessary to protect against unauthorized disclosure of any classified documents or information and will issue guidelines regarding the handling of classified information.  PC shall seek guidance from the PRS with regard to appropriate storage, handling, transmittal, and use of classified documents or information, and shall follow such guidance.

9

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

e.  All documents prepared by PC for purposes of assisting the detainee-client in PRB proceedings that contain or may contain classified or presumptively classified information, including, without limitation, notes made during or in anticipation of meetings or conversations between PC and the detainee-client, shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons possessing an appropriate approval for access to classified information. Such activities shall take place within a PRS Secure Facility, in accordance with procedures approved by the PRS.

f.  PC shall not copy or reproduce any classified or presumptively classified information in any form except in accordance with the procedures established by the FSO for the operation of the PRS Secure Facility.

g.  PC shall not divulge, disclose, or distribute classified or presumptively classified information to any person or entity not authorized to receive it, nor receive such information from any person not authorized to disclose it.  The PC is authorized to discuss classified and presumptively classified information with PC staff, as defined in paragraph 3c., and the PR assigned to assist the detainee-client in the PRB proceeding, subject to the provisions of this MOU and the restrictions found in Section 3(a)(5) of EO 13567.  If PC believes dissemination of classified or presumptively classified information to other parties is required, PC may seek, on a case-by-case basis, authorization to disclose such information.  Any such requests should be submitted to the PRS stating the reason for which permission to disseminate classified information is being sought.

h.  PC shall not divulge classified or presumptively classified information to a detainee-client unless that information was previously provided to that PC by that detainee-client in a prior meeting or written communication between the PC and the detainee-client.

i.  Pursuant to this MOU and applicable law, at no time, including any period subsequent to the conclusion of the access provided for hereunder, will PC make any public or private statements disclosing any classified or presumptively classified information or documents accessed pursuant to this MOU, including the fact that any such information or documents are deemed classified.  In the event that classified or presumptively classified information enters the public domain, however, PC is not precluded from making private or public statements about the information already in the public domain, but only to the extent that the information is in fact in the public domain.  PC may not make any public or private statements revealing personal knowledge from non-public sources regarding the classified or presumptively classified status of the information or disclosing that PC had personal access to classified information or CUI confirming, contradicting, or otherwise relating to the information already in the public domain.  PC shall not be the source of any classified or presumptively classified information entering the public domain. Failure to comply with these rules may result in suspension or termination, for some

UNCLASSIFIED

Version 22 Jul 2013

or all purposes, of PC's access to GTMO, of PC's access to the detainee-client, of PC's access to classified information and CUI, of PC's access to PRS Secure Facility and/or of PC's security clearance, as well as civil and criminal liability.

j. PC may discuss classified or presumptively classified information as otherwise permitted by this MOU within a PRS Secure Facility, in a secure area at JTF-GTMO or another secure area authorized by the PRS.  PC shall not discuss classified or presumptively classified information over any standard commercial telephone instrument or office intercommunication system and shall not transmit or discuss

classified or presumptively classified information in electronic mail communications of any kind.

k. All documents containing classified or presumptively classified information prepared, possessed or maintained by, or provided to, PC for purposes of assisting the detainee-client in proceedings before the PRB  shall remain at all times at a PRS Secure Facility for the duration of the PRB process unless otherwise directed by the PRS.  If such material includes attorney-client privileged material or attorney work-product material, it shall be maintained in a manner that protects the attorney-client privilege.

l. The termination of access hereunder for any reason, including but not limited to the substitution or departure of PC or removal of PC from legal representation of the detainee-client shall not release PC from the provisions of this MOU regarding disclosure of classified or presumptively classified information.

9. **Designation Procedures for and Access to CUI**

a. Without specific written authorization from the United States Government, no PC shall have access to any CUI, as defined in paragraph 3.g. above, unless that person has complied with the requirements of this MOU and provided an executed original of Attachment A to the PRS. Such compliance is a condition precedent to PC having access to CUI information for the purposes of legal representation of a detainee-client for PRB purposes.

b. Designation of material as "CUI."

(1) In the context of classification reviews performed pursuant to this MOU, the Privilege Team described in paragraph 3.d, above, is designated to determine, in consultation with pertinent authorities within DoD and other agencies as required, whether or not a document or information contains CUI within the meaning of paragraph 3.g.  If the Privilege Team designates certain information obtained from a detainee-client as CUI, PC shall safeguard that information in accordance with the terms of this MOU; DoD Manual 5200.01, Volume 4 (February 24, 2012); and EO 13556, 3 C.F.R. 68675 (2011).

11

Version 22 Jul 2013

(2) Authorities within DoD and other agencies may also designate information as CUI other than in the context of the classification review described in paragraph 9.b.(1), above.

c.  CUI shall be used only for purposes directly related to assisting the detainee-client in proceedings before the PRB, and not for any litigation or other proceeding, except by leave of the DoD or other authorized agency.  Photographic or electronic copies of documents containing such information shall be made only to the extent necessary to facilitate a permitted use hereunder.

d.  PC shall maintain all CUI and CUI documents received pursuant to this MOU in a manner consistent with the controls required by the terms of this MOU; DoD Manual 5200.01, Volume 4 (February 24, 2012); and EO 13556, 3 C.F.R. 68675 (2011).

e.  The PC is authorized to discuss CUI with PC staff and the PR assigned to assist the detainee-client in the PRB proceeding, subject to the provisions of this MOU and the restrictions found in Section 3(a)(5) of EO 13567.  The PC is authorized to discuss CUI with PC, PC staff and PR for related PRB proceedings.  Except as provided for in this MOU, or as specifically authorized by the appropriate Government personnel, PC shall not divulge, disclose, or distribute CUI to, or receive such information from, any person or entity other than the PR.

f.  PC shall not disclose CUI to a detainee-client unless that information was previously provided to that PC by that detainee-client in a prior meeting or written communication between the PC and the detainee-client.

g.  Pursuant to this MOU and applicable law, at no time, including any period subsequent to the conclusion of the access provided for hereunder, will PC make any public or private statements disclosing any CUI accessed pursuant to this MOU, including the fact that any such information or documents are CUI.  In the event that CUI enters the public domain, however, PC is not precluded from making private or public statements about the information already in the public domain, but only to the extent that the information is in fact in the public domain.  PC may not make any public or private statements revealing personal knowledge from non-public sources regarding the CUI status of the information or disclosing that PC had personal access to classified information or CUI confirming, contradicting, or otherwise relating to the information already in the public domain.  PC shall not be the source of any CUI entering the public domain.  Failure to comply with these rules may result in suspension or termination, for some or all purposes, of PC's access to GTMO, of PC's access to the detainee-client, of PC's access to classified information and CUI, of PC's access to PRS Secure Facility and/or of PC's security clearance, as well as other sanctions.

UNCLASSIFIED

Version 22 Jul 2013

h.  The termination of access hereunder for any reason, including but not limited to the substitution or departure of PC or removal of PC from legal representation of the detainee-client shall not release PC from the provisions of this MOU regarding disclosure of CUI.

10.  **Classification Determination and Handling of Oral and Written Information Received from Detainee-Clients**

a.  PC shall treat and handle all information obtained or received from a detainee-client during the course of providing legal representation (including any oral and written communications with the detainee-client) as classified at the SECRET level, unless and until the information is submitted to the Privilege Team and that Privilege Team, in consultation with pertinent classification authorities within DoD and other agencies as deemed necessary and described in paragraph 10.d. below, determines it to be otherwise.

b.  PC may submit information learned from a detainee-client to the Privilege Team for a determination of its appropriate security classification. PC shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which PC requests a classification determination. All documents submitted for classification review shall be prepared, handled, and treated in the manner required for classified materials as required by EO 13526, and DOD Manual 5200.01 Volume 1, 3 (February 24, 2012).

c.  The Privilege Team will process information written in English within 15 business days and any information that includes writing in any language other than English, within 20 business days.  Additional time may be required for material where the Privilege Team has reason to believe that the submitted materials contain a code or hidden message or subtext, to allow for further analysis.   These time frames can be adjusted by the Privilege Team as necessary in order to account for unanticipated operational or resource constraints.

d.  With PC's consent, the Privilege Team may consult with pertinent classification authorities in DoD or other agencies for the purpose of identifying classified information and marking documents with the appropriate classification.  If PC does not consent to such consultation, information for which consultation is required will remain classified.

e.  PC shall promptly report to the Commander, JTF-GTMO any information learned from a detainee-client that reasonably could be expected to result in immediate and substantial harm to the national security, imminent acts of violence, or future events that threaten national security, or that presents a threat to the operation of the detention facilities or to United States Government personnel. In his discretion, the Commander, JTF-GTMO may disseminate the relevant portions of the information to law enforcement military, and intelligence officials, as appropriate.

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

11. **Disclosure of Information by the Privilege Team**

    a.  The Privilege Team shall promptly report to the Commander, JTF-GTMO any information learned from PC that reasonably could be expected to result in immediate and substantial harm to the national security, imminent acts of violence, or future events that threaten national security, or that presents a threat to the operation of the detention facilities or to United States Government personnel. In his discretion, the Commander, JTF-GTMO may disseminate the relevant portions of the information to law enforcement military, and intelligence officials, as appropriate.

    b.  The Privilege Team shall not reveal to any person the content of any information learned from PC in the course of their duties except as provided for under this MOU.

    c.  Additionally, the presence of the Privilege Team shall not be construed to waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections.

12. **Logistics and Requirements for PC Visits with Detainee-Clients**

    a.  All visits by PC must be related to and for the purpose of assisting the detainee-client in proceedings before the PRB.

    b.  PC shall submit to the PRS, through the PR, any request to meet with a detainee. Requests shall specify dates of availability for a meeting, the desired duration of the meeting, and the language that will be utilized during the meeting with the detainee. Reasonable efforts will be made to accommodate PC's requests regarding the scheduling of a meeting. Once a request is approved, the PR will contact PC with the date and duration of the meeting.

    c.  Legal visits shall take place in a facility designated and approved by JTF-GTMO. No more than one PC, one PR and one interpreter/translator shall visit with a detainee-client at one time, unless approved in advance by the PRS. These facilities are subject to visual monitoring by closed circuit TV for safety and security reasons. No oral communications between PC and the detainee-clients will be heard.

    d.  Due to the mission and location of GTMO, certain logistical details, including arrangements for travel and lodging, will need to be coordinated by PC prior to arrival. The PRS will provide specific information to PC regarding these issues.

    e.  In order to travel to GTMO, PC must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, PC must have confirmed flight information for travel to GTMO and a valid, current United States security clearance at the SECRET level or higher or its equivalent, as

14

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

determined by appropriate DoD intelligence personnel. Country and theater clearances require twenty days to process. Accordingly, PC shall provide the PRS, through the PR, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

f.  PC shall not interview or question members of the Joint Task Force about their duties or interactions with detainee-clients without first obtaining permission from the Commander, JTF-GTMO. All requests for direct communication must be routed to the JTF-GTMO Staff Judge Advocate (SJA).

g.  Upon arrival at the JTF-GTMO meeting facilities, security personnel will perform a physical search of PC and PRs, which may include the use of metal detectors frisk as necessary.  In addition, JTF-GTMO will conduct a physical inspection of PC's bags and briefcases.

13. **Mail Sent By Private Counsel To Detainee-Clients ("Incoming PRB Mail")**

a.  Incoming mail sent by PC related to and in furtherance of PC's assistance to the detainee-client in PRB proceedings is defined herein as "incoming PRB mail."

b.  PC shall send incoming PRB mail for detainee-clients to the Privilege Team at the appropriate address provided by the PRS. Each envelope or mailer shall be labeled with the name of the detainee-client, the ISN of the detainee-client, and shall include a return address for PC sending the materials. The outside of the envelope or mailer for incoming PRB mail shall be labeled clearly with the following annotation: "Private Counsel-Detainee PRB Materials-For Mail Delivery to Detainee."

c.  Each page of incoming PRB mail shall be labeled "Private Counsel-Detainee PRB Materials." No staples, paper clips, metal bindings, wires, or any non-paper items shall be included with the documents.

d.  Upon receiving incoming PRB mail from PC for delivery to the detainee-client, the Privilege Team shall open the envelope or mailer to search the contents for prohibited contraband. Within two business days of receipt of incoming PRB mail, and assuming no contraband is present, the Privilege Team shall forward the mail to military personnel at JTF-GTMO in a sealed envelope marked "PRB Mail Approved by the Privilege Team" and clearly indicating the identity of the detainee-client to whom the PRB mail is to be delivered. The Privilege Team shall return to the sender any incoming PRB mail that does not comply with the terms of paragraphs 3.i. and 13.a.-c. of this MOU.

e.  Within two business days of receipt of incoming PRB mail from the Privilege Team, personnel at JTF-GTMO shall deliver the envelope or mailer marked by the

15

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

Privilege Team as "PRB Mail Approved by the Privilege Team" to the detainee-client without opening the envelope or mailer. If PC desire confirmation that documents were delivered to the detainee-client, PC shall provide a self-addressed stamped envelope separate from the envelope holding the PRB mail for that purpose. The detainee-client shall be responsible for mailing any confirmation of delivery to PC as outgoing mail. This method shall be the sole and exclusive means by which confirmation of delivery is provided to PC.

f.  Written correspondence to detainee-clients not falling within the definition of incoming PRB mail shall be sent through the United States Postal Service to the appropriate address provided by the PRS. Non-PRB mail includes, but is not limited to, letters from persons other than PC, including family and friends of the detainee-client, which are unrelated to the PRB proceedings. These non-privileged communications will be reviewed by personnel at JTF-GTMO under the standard operating procedures for detainee-client non-PRB mail.

g.  PC shall treat all information learned from a detainee-client, including any oral and written communications with a detainee-client, as classified information at the Secret level, unless and until the information is submitted to the Privilege Team, which determines it to be otherwise. Accordingly, if PC's correspondence contains any summary or recitation of or reference to a communication with a detainee-client that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by EO 13526 and DOD Manual 5200.01 Volume 1, 3 (February 24, 2012).

h.  Written and oral communications with a detainee-client, including all incoming PRB mail, shall not include contraband as defined under this MOU.  Unanticipated operational or other resource constraints may result in the extension of processing times for incoming PRB mail under this MOU.

14. **Mail Sent by Detainee-Clients to Private Counsel ("Outgoing PRB Mail")**

a.  All outgoing mail sent by a detainee-client to PC related to and in furtherance of PC's assistance to the detainee-client in PRB proceedings is defined herein as "outgoing PRB mail."

b.  Detainee-clients will be provided with paper and writing utensil to prepare communications to PC. In the presence of military personnel, the detainee will seal the written communication in an envelope and it will be annotated as "Private Counsel-Detainee PRB Materials-For Mail Delivery To Counsel." Each envelope shall be labeled with the detainee-client's and PC's names, as well as the detainee-client's ISN.  Envelopes annotated with the names of persons other than the detainee-client's PC, including family, friends, or other attorneys, shall be processed according to the standard operating procedures for detainee non-PRB mail.

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

c.    Military personnel will collect the outgoing PRB mail three times a week, on weekdays, unless exigent circumstances dictate otherwise.

d.    After outgoing PRB mail is collected from a detainee-client, the envelope will be sealed into a larger envelope by military personnel at JTF-GTMO. The larger envelope will be marked as "Private Counsel-Detainee PRB Materials-For Mail Delivery To Counsel" and will be annotated with the detainee-client's and PC's names, as well as the detainee-client's ISN. The envelope will be sealed and transported either by hand or via mail in the manner required for classified materials. Within three business days of receipt from the detainee-client, the communication will be provided to the PRS for transport or mailed to the appropriate address as provided by the PRS.

e.    Detainee-clients also are permitted to send non-PRB mail, including written communications to persons other than PC, through the United States Postal Service. These communications shall be reviewed by military personnel at JTF-GTMO under the standard operating procedures for detainee non-PRB mail.

f.    In the event any correspondence or messages from a detainee to individuals other than his PC, including family, friends, or other attorneys, are sent to PC as, or included with, PRB mail, but are not, in fact, related to or in furtherance of PC's assistance to the detainee-client in PRB proceedings, PC shall return the documents to the Privilege Team which will return the materials to JTF-GTMO for processing according to the standard operating procedures for detainee non-PRB mail.

15.  **Materials Brought into Meeting with Detainee-Clients and PC's**

a.    All such materials must be related to and in furtherance of PC's assistance to the detainee-client in PRB proceedings.

b.    PC shall bring only approved PRB mail, writing utensils and paper into any meeting with a detainee-client, unless PC receives prior approval from the Commander, JTF-GTMO. Any other item containing content, such as documents, magazines, letters, or any digital media, must be screened by the Privilege Team before arriving on GTMO.  Items not previously screened will not be permitted in the meeting facility.

c.    Written and oral communications with a detainee-client, including all documents brought into a meeting with a detainee-client, shall not include contraband as defined by JTF-GTMO.

16.  **Materials Brought out of Meetings with Detainee-Clients and Private Counsel**

a.    All such materials must be in furtherance of the PC's assistance to the detainee-client in proceedings before the PRB.

UNCLASSIFIED

Version 22 Jul 2013

b.  Upon completion of each meeting with a detainee-client or during any break in a meeting session, PC will give the notes or documents used or produced during the meeting to the designated individual at JTF-GTMO or the PRS.  These materials shall be sealed in PC's presence and handled as classified material as required by EO 13526 and DOD Manual 5200.01 Volume 1, 3 (February 24, 2012).

c.  Upon completion of PC's visit to GTMO, the notes or documents used or produced during the visits shall be sealed in PC's presence and placed in an envelope labeled as "PRB Private Counsel-Detainee Meeting Documents–For Delivery to Counsel." The envelope shall be sealed into a larger envelope by military personnel at GTMO. The larger envelope shall be marked as "PRB Private Counsel-Detainee Meeting Documents-For Mail Delivery To Counsel" and annotated with the detainee-client's and PC's names, as well as the detainee-client's ISN. The envelope shall be sealed and transported in a manner required for classified materials, either hand-carried by an authorized courier or mailed. Within two business days following completion of PC's visit to GTMO, the package shall be mailed or hand-carried to the appropriate address provided by the PRS.

d.  Correspondence or messages from a detainee-client to individuals other than his PC, including family, friends, or other attorneys, will not be handled through this process unless they are communications provided to PC which are intended to elicit information for use in the PRB proceedings.  If a detainee-client provides these communications to PC during a visit, PC shall give those communications to the Privilege Team which will return the materials to JTF-GTMO for processing under the standard operating procedures for detainee non-PRB mail.

17. **Telephonic Access to Detainee-Clients**

a.  Requests for telephonic access to a detainee-client by PC must be in furtherance of the PC's assistance of the detainee-client in proceedings before the PRB.

b.  Requests for telephonic access to a detainee-client by PC or other persons will not normally be approved.  Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to the Commander, JTF-GTMO through the PRS.

c.  Any telephonic access by PC is subject to appropriate security procedures.

d.  Any telephonic access by persons other than PC is subject to appropriate security procedures, including contemporaneous monitoring and recording.

**UNCLASSIFIED**

Version 22 Jul 2013

**Attachment A**

**AFFIRMATION AND ACKNOWLEDGMENT REGARDING ACCESS TO
CLASSIFIED NATIONAL SECURITY INFORMATION**

The undersigned hereby acknowledges and affirms that he/she has read the **Memorandum of Understanding Governing Private Counsel Representation of Detainees in Periodic Review Proceedings Pursuant to Executive Order (EO) 13567** (hereinafter MOU), understands its terms, and agrees to be bound by each of those terms.

The undersigned acknowledges that his/her duties regarding access to and disclosure of classified information and controlled unclassified information as set forth in the MOU shall survive the termination of this attorney/client relationship and are permanently binding, and that failure to comply with the terms of the MOU may result in sanctions described in the MOU, to include, but not limited to immediate denial of access to detainee-client, revocation of PC's security clearance, and/or suspension or termination of PC's access to the United States Naval Station in Guantanamo, Cuba, within the discretion the Periodic Review Secretariat.

Having familiarized him/herself with the applicable statutes, regulations, and orders related to, but not limited to, unauthorized disclosure of classified information, espionage and related offenses; The Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 et seq.; and EO 13526; and 32 C.F.R. § 2001, the undersigned acknowledges that he/she may be the recipient of classified and/or controlled unclassified information as a result of entering into the MOU.

In consideration for the disclosure of such classified and/or controlled unclassified information and documents, the undersigned:

1.  Agrees that he/she shall never divulge, publish, or reveal either by word, conduct or any other means, such classified and/or controlled unclassified information unless specifically authorized in writing to do so by an authorized representative of the United States Government, or as expressly authorized by the MOU.
2.  Agrees that this acknowledgment and any other nondisclosure agreement signed by him/her will remain forever binding on him/her.

DATED:_____        BY:_____
                                               (type or print name here)

                                       SIGNED:_____

COUNTER-SIGNATURE:                     _____

                                       PRS DIRECTOR

DATED:_____

**UNCLASSIFIED**

UNCLASSIFIED

Version 22 Jul 2013

# PERIODIC REVIEW SECRETARIAT

## Attachment B:

## Private Counsel Procedures Applicable to the Periodic Review Board Process

These Private Counsel (PC) Procedures are established by the Periodic Review Secretariat (PRS) Director in order to administer the PRB review and hearing process pursuant to EO 13567 and DTM 12-005. These PC Procedures may be amended at the discretion of the PRS Director; in the case of such amendment, PC's continued access to the detainee-client for purposes of assistance in PRB proceedings shall be conditioned on PC's agreement to and compliance with the amended PC Procedures.

These PC Procedures are not intended to, and do not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any detainee-client, counsel or any other party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

These PC Procedures are to be read in conjunction with the Memorandum of Understanding Governing PC Representation of Detainees in Periodic Review Proceedings Pursuant to EO 13567 (hereinafter referred to as "MOU").

PC shall at all times and in all PRB proceedings comply with all of the terms of the MOU and PRS security and facility instructions and procedures, to include these PC Procedures. Failure to comply with the terms of the MOU, PRS security and facility instructions and PC procedures, may result in the penalties noted in the MOU as deemed appropriate by the PRS Director.

1.      Requirements to Assist in PRB Proceedings

For purposes of these procedures, PC are designated "prospective PC" until the detainee-client authorizes PC to assist with the PRB process, at which time the attorney is designated as "authorized PC." Where no distinction is made in these procedures between "authorized" and "prospective" PC, the obligation applies to both categories of PC.

1

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

If the detainee has a prior relationship with a PC that warrants designation as "prospective PC", the PRS Staff Judge Advocate (SJA) will contact the PC to determine whether they want to participate in the PRB process. This prior relationship could be based on the private attorney currently representing the detainee-client in another proceeding (such as the detainee-client's habeas corpus or military commissions case), the private attorney having previously assisted the detainee-client in a PRB proceeding, or the private attorney having been hired by a foreign government to assist the detainee-client in the PRB proceedings.

Prior to obtaining any access to the detainee-client for any PRB purpose (either to obtain authorization or to assist in the PRB process), a PC must comply with all Notice of Appearance requirements including:

- Agreeing to the terms of the Memorandum of Understanding Governing Private Counsel Representation of Detainees in Periodic Review Proceedings Pursuant to Executive Order 13567 (MOU) and signing the MOU Affirmation and Acknowledgement.

- Submitting to the PRS a Notice of Appearance indicating PC meets the requirements outlined in DTM 12-005, Attachment 3, paragraph 5.g. that shall include PC's business and email addresses, phone number, licensing information and affirmatively attest that private counsel: (1) is admitted to the practice of law in a State, district, territory, or possession of the United States, or before a Federal Court; (2) has not been the subject of any sanction or disciplinary action by any court, bar, or other competent governmental authority for relevant misconduct; and (3) is currently holding or is eligible and is anticipated to receive clearance for access to information classified at the SECRET level. The Notice shall also include any information available which shows the particular detainee-client has requested assistance from prospective PC in proceedings before the PRB.

If it is determined the PC wants to or is authorized to assist the detainee-client in the current PRB proceeding, the Personal Representative (PR) will work with prospective PC to obtain authorization, and will work with PC to ensure compliance with the Notice of Appearance and detainee-client access requirements detailed in these procedures and the MOU. The PR will provide documentation of PC's compliance with these requirements to the PRS as required.

After a PC obtains authorization to assist the detainee-client in the PRB proceedings in accordance with the MOU, PC will submit to the PRS, through the PR, the PC Authorization Form. The PC Authorization Form is due as soon as practicable, but in any event, not later than five calendar days after the conclusion of PC's visit with the detainee-client wherein PC obtains authorization. In the event the detainee-client declines to sign the PC Authorization Form, the PC may submit a sworn declaration signed by the PC stating the detainee-client has authorized PC to assist him in proceedings before the PRB.

2

Version 22 Jul 2013

A previous authorization to represent the detainee-client in habeas corpus proceedings will not be sufficient for PRB purposes.

Once a PC has obtained authorization to assist a detainee-client in the PRB process, the PR may review the PR Non-Disclosure Policy with authorized PC.

A PC has a continuing obligation to notify and keep the PR informed of any changes in PC's contact information, licensing status, or the status of their security clearance.

The PR will continue with PRB proceedings in the event of withdrawal or substitution of authorized PC.  Withdrawal or substitution of authorized PC shall not serve as a basis for delay of the PRB hearing.

2.    Filing Requirements

All detainee-clients will be assigned a PR but all detainee-clients may not have a PC assisting with the process.  Therefore, the PR will serve as the focal point for all detainee-client PRB-related requests and submissions throughout the PRB process.  Authorized PC shall submit requests and submissions and direct any correspondence to or communications with the PRS, the Case Administrator, the PRB Clerk or PRB members, solely through the PR.

All witness requests, detainee-client submissions, and all other information, documents and pleadings to be considered by the PRB will be provided to the Case Administrator by the PR in paper version and shall include an original plus two copies, properly marked with classifications.  Date of receipt shall be the date received by the Case Administrator.

Print size in requests and submissions will be no smaller than 12-point font and will be submitted on 8 ½ x 11 inch paper and contain appropriate classification markings if needed. English translations shall be provided with any request, submission, attachment or exhibit, or part thereof, not in the English language.  All submissions shall be paginated.  Detainee-client submissions shall be Bates-stamped.

3.    Visits and Telephone Calls to Detainee-clients

PC will coordinate visits to PRS facilities, as well as PRB-related meetings or telephone calls with detainee-clients at Guantanamo Bay, Cuba through the PR.  PC shall provide the PR with the requisite information in order to properly submit all requests to the appropriate PRS personnel at least 20 calendar days prior to the desired date for scheduling, obtaining clearances and lodging.

Once all necessary logistical arrangements have been confirmed, the PR will receive a scheduling notice with an itinerary that provides all pertinent information for the detainee-client meeting.  The PR will provide a copy of the scheduling notice to the PC.

The PR has primary responsibility for escorting PC on the windward side of Guantanamo Bay, Cuba, to include escorting them to meetings with the detainee-clients.

3

Version 22 Jul 2013

PRB-related meetings should be conducted with a PR present.  If, in coordinating a meeting or during the course of a meeting, either the detainee-client or the authorized PC requests to have a private meeting to discuss a PRB-related matter without the PR, the PR shall excuse himself/herself from the meeting for a reasonable period of time to permit a private discussion between the authorized PC and the detainee-client.

Telephone calls are not permitted for HVDs.

PR and PC will not be permitted to meet with the detainee-client in the detention facilities.  Instead, approved meetings will occur in dedicated meeting spaces designated by Joint Task Force-Guantanamo (JTF-GTMO).

JTF-GTMO is a highly secure environment.  Therefore, the following information is provided to help the PC conduct a smooth visit.  The information is provided as a guide, however, and is subject to change by JTF-GTMO.  Therefore, PC and PRs should consult with the PRS prior to their departure to ensure the information they have is current:

- PC shall comply with all JTF-GTMO physical security requirements during meetings.

- PC and PR should not communicate directly with JTF-GTMO personnel or offices.  If the PC and PR need to communicate directly with JTF-GTMO, they should contact the JTF-GTMO SJA's office.

- Food items (not tobacco) are permitted during PC visits.  All such food items are subject to inspection.  The detainee-client is not permitted to retain possession of food items after the conclusion of the meeting.  JTF-GTMO staff may refuse to allow any specific food item or packaging into the meeting area.  PC may bring plastic spoons or sporks, as necessary, to use to consume food items, but knives and forks are not permitted.

- In the event PC wants to leave PRB-related documents with the detainee-client after a meeting, these documents must meet the requirements of paragraph 15 of the MOU. The PC or PR must have the documents reviewed by the Privilege Team prior to their arrival on GTMO.  Attorney-client privileged documents that have not been previously cleared by the Privilege Team cannot be left with the detainee-client until cleared.  While it is possible that any Privilege Team members on GTMO may review material not previously cleared, this is dependent on their availability.  Therefore, PC and PRs should not expect that on-island Privilege Team resources, if any, will be available to conduct a review.  Documents that are not attorney-client privileged should be delivered to JTF-GTMO SJA, who will coordinate their review with the appropriate office.   Material that is not cleared or is deemed contraband or otherwise inappropriate will be returned to the PC or PR.

- Due to the operational environment of JTF-GTMO, the time, date and/or location of a visit are subject to change by JTF-GTMO.  Notice will be provided when practicable;

4

Version 22 Jul 2013

however, meetings may be cancelled without notice when operational, security or other exigent circumstances exist.

- At the conclusion of a meeting, PC must package up all notes from that meeting as that material is presumptively classified at the SECRET level. The wrapped notes shall then be provided to the PR for transport back to a secure PRS facility in accordance with proper procedures.

- If a detainee-client refuses to meet with PC on the scheduled day of a visit, PC may submit a non-privileged written letter to JTF-GTMO for delivery to the detainee-client. If upon review of the letter, the detainee-client agrees to the meeting, he will be moved as soon as practicable for the scheduled meeting. If the detainee-client refuses to meet with the PC, PC will be advised accordingly and the meeting will be cancelled.

- PC will provide at least 48 hours written notice to the PR in the event they are unable or unwilling to travel to GTMO for a scheduled meeting with the detainee-client.

- Standard visitation hours are Monday – Friday, 0900-1230 and 1330-1600 hours. JTF-GTMO reserves the right to modify these standard visitation hours. Meetings generally will not occur on federal holidays and weekends. Exceptions to standard visitation hours generally will not be granted. Any request for an exception must be submitted in writing to the PR and may be permitted at the sole discretion of the Commander, JTF-GTMO Joint Detention Group.

- On the day of the scheduled meeting, the PR will coordinate with PC to arrive at the meeting facility sufficiently in advance of the scheduled meeting time to ensure all requisite pre-meeting screening and procedures have been complied with and to enable the meeting to commence in a timely manner. Failure to arrive at the designated meeting location within 15 minutes after the scheduled start of a requested visit may result in cancellation of the visit.

- Civilian clothes worn during the meeting will be appropriate for conducting official business inside JTF-GTMO detention facilities with a detainee-client. Dress should be, at a minimum, business casual, including, shirt with collar, full length trousers, socks and shoes for men and the equivalent for women.

4.    <u>PRS Secure Facility</u>

An authorized PC will be eligible to use the PRS Secure Facility in order to provide a detainee-client PRB-related assistance. PC must comply with all secure facility procedures identified in the PRS Secure Facility Guide, and is responsible for taking appropriate steps to ensure the proper security and storage of materials and information provided to him/her throughout the PRB process by the PR.

Version 22 Jul 2013

5.    Receipt of Detainee-client Dossier

Once the dossier has been prepared in accordance with EO 13567 and DTM 12-005, the Case Administrator will provide copies of the dossier, which includes any required substitutes or summaries and the unclassified summary, as well as the Calendar of Deadlines, to the PR.  The PR will provide authorized PC with the dossier approved for the PC and the Calendar of Deadlines once the PC has obtained authorization to assist the detainee-client in the PRB process.

6.    Notification

Once PC has complied with the Notice of Appearance requirements PC may participate in the Notification of the detainee-client by the PR.  The purpose of the Notification visit is for the PR to introduce him/herself to the detainee-client, provide the detainee-client with a brief of the PRB process, and work with the detainee-client to determine whether the detainee-client wishes to have a PC assist him through the PRB process.  If prospective PC wishes to be present for the Notification visit, the PR will make every effort to accommodate the prospective PC's presence, provided doing so does not cause delay in the process moving forward.

In the event prospective PC wants to assist the detainee-client in the PRB process but has not yet obtained authorization, the PR will work with prospective PC to address that matter at the beginning of the Notification visit.  If the detainee-client agrees that prospective PC will assist him in the PRB process, the PR will work with the detainee-client to fill out the PC Request and Notice of PC Authorization Forms to reflect that election and PC will be designated as authorized PC.  If the detainee-client does not desire prospective PC's assistance in the PRB process, the PR will escort prospective PC back to lodging without further delay.

If the detainee-client makes a PC election during the Notification visit (or before) and the authorized PC is present during the Notification visit, then the PR may continue with an interview of the detainee-client for case preparation and other matters addressed in the Initial Meeting with the detainee-client.

7.    Initial Meeting with the Detainee-client

Authorized PC will only participate in the Initial Meeting if he/she has complied with the Notice of Appearance requirements and obtained authorization from the detainee-client to assist in the PRB process.

The PR and authorized PC will cover the following matters in the Initial Meeting:

- Ensure the detainee-client understands the purpose of the PRB and its procedures and answer any questions he may have about the process.

- Provide the unclassified summary to the detainee-client, review it with him, and assist him with preparing a response to the information in the summary.

6

Version 22 Jul 2013

- Review with the detainee-client and assist him in completing the Detainee Participation Form, including whether the detainee-client wishes to attend the PRB hearing and whether he wishes to give a statement and answer questions during the hearing.  Detainee-client elections to appear before the PRB hearing which are submitted after the date set in the Calendar of Deadlines may not be accommodated if coordinating detainee-client attendance will cause undue delay to the PRB proceedings.

- Discuss with the detainee-client his ability to call witnesses and obtain the information pertinent to locating or requesting witnesses.  Written statements from witnesses are preferred to assist the conduct of the proceedings and to ensure a complete presentation of the information to be provided by the witnesses.

8.      Hearing Date and Deadlines

Deadlines will not change if the hearing date is subsequently moved, unless a new Calendar of Deadlines is issued by the PRB Clerk.

All deadlines are calculated using calendar days, including weekends and holidays. Deadlines falling on a weekend or federal holiday will automatically be extended to the next business day.

9.      Witness Requests

The detainee-client shall be permitted to call witnesses provided the PRB concludes, by consensus, the information to be provided by the witness is (1) relevant and material to the determination of whether continued law of war detention is necessary to protect against a continuing significant threat to national security of the United States and (2) that the witness is available and willing to appear before the PRB either by telephone, through video conference or in person, as appropriate.

Witness requests are to be submitted by the PR using the Witness Request Form to the Case Administrator.  Witness requests are due on the date identified in the Calendar of Deadlines.  Witness requests shall include a list of all possible witnesses that will testify before the PRB, but does not need to include names of witnesses who may submit a written statement.

Witness requests shall include the following information:  all contact information for the witness that the detainee-client, PR or authorized PC can provide, information the witness may provide which could potentially assist the detainee-client, information indicating the witness' availability and willingness to appear, and whether testimony is expected through video conference, by telephone or in person.  Filling out as much information as possible in the Witness Request Form is essential for the PRB to make a decision regarding whether the witness will be approved to provide testimony at the hearing.

Late or incomplete witness requests will only be considered at the discretion of the PRB.

7

UNCLASSIFIED

Version 22 Jul 2013

PRB decisions regarding witness requests are final.

The Case Administrator will notify the PR of the PRB decision on the witness requests as soon as those decisions are made.  The PR will notify the authorized PC of the decision.

In the event the PRB denies the witness request, the PR may seek to have the witness provide his or her testimony in written form.

The PR has primary responsibility for coordinating witness participation during the PRB.

10.    Detainee-client Submissions

Detainee-client submissions and other information to be considered by the PRB are due no later than the date indicated on the Calendar of Deadlines.

The PR will coordinate with the detainee-client and authorized PC in the final preparation of the detainee-client's written submission.  Meetings between the PR, detainee-client and authorized PC will be conducted as necessary in order to ensure the timely completion of the detainee-client's written submission.

The detainee-client submission shall only include information relevant and material to the determination of whether the detainee-client remains a continuing significant threat to the security of the U.S. and specifically, what information the detainee-client can provide on that issue.

Detainee-client submissions shall include an Executive Summary which may be followed by an expanded written brief.  Detainee-client submissions may also include exhibits, a witness list, and written statements from the detainee-client and/or witnesses.  The Executive Summary shall be no more than five pages.  The expanded written brief shall be no more than 45 pages.  The exhibits shall be no more than 100 pages.  The witness list and witness statements are not subject to a page limit and do not count as exhibits.

Detainee-client submissions shall include a list of witnesses approved by the PRB to provide statements at the hearing.  The witness list shall identify and provide any witness information that may have changed since detainee-client's witness request and must include any information regarding an approved witness that is different from that information provided in the detainee-client's witness request, including an updated proffer of testimony.

The detainee-client submission may contain statements from witnesses such as the detainee-client's family members, which provide information relevant and material to the PRB's determination.

The detainee-client submission may include a written statement by the detainee-client if he wishes to write one.  The written statement should include, but is not limited to:

8

UNCLASSIFIED

Version 22 Jul 2013

- The detainee-client's response to the information contained within the unclassified summary

- The detainee-client's record of behavior while in custody

- The detainee-client's plans or goals for the future if he were to be transferred, such as:

  - his likelihood of reestablishing ties with al-Qaida, the Taliban, or associated forces engaged in hostilities against the United States or its coalition partners
  - information pertaining to whether the group he was part of at the time of capture is now defunct
  - likelihood of family and/or tribal support for him

- reasons why the detainee-client is not a continuing significant threat to the national security of the United States.

Requests for a late detainee-client submission will be considered by the PRB. Should the PRB determine that the late submission cannot be reviewed prior to the conclusion of the current PRB review cycle, the submission will be held for review in the next PRB review cycle. PRB decisions regarding late submissions are final.

Preparation of the detainee-client's submission shall comply with all security regulations and security classification requirements provided for in the PRS Security Instruction.

11.    Extensions and Continuances

Requests to extend or modify any deadline or requests to reschedule or continue the PRB initial hearing date shall be submitted by or through the PR to the Case Administrator, who will provide the requests to the PRB Clerk.

Requests for extensions, modifications, new hearing dates, or continuances must explain the basis of the request. The PRB will review and determine by consensus whether to grant or deny the request. PRB decisions on these requests are final.

12.    Board Proceedings

PRB hearings will be held at PRS Headquarters unless otherwise directed by the PRB.

Prior to board proceedings, authorized PC will confirm with the PR that all clearances have been provided to the appropriate PRS personnel to ensure authorized PC can attend the classified portion of the hearing.

The PR and authorized PC, at their discretion, may appear either in person at the actual hearing location or through secure video teleconference (SVTC) from GTMO.

9

UNCLASSIFIED

Version 22 Jul 2013

The PR must notify the Case Administrator no later than 21 calendar days prior to the hearing date of any proposed presence at GTMO for the PR or authorized PC during the hearing. The PR will facilitate all travel arrangements for the authorized PC.

Detainee-clients who elect to appear before the PRB may appear via SVTC from GTMO unless otherwise directed.

If the detainee-client elects not to attend the PRB hearing, the hearing will continue in his absence. The PR and authorized PC will continue to represent the detainee-client's interests at a PRB hearing held in the detainee's absence.

PRB proceedings are under the direction of the PRB members and may proceed in a manner deemed appropriate by the PRB.

Professional decorum will be maintained throughout the PRB process and hearing. Proper attire is required of all participants. Individuals displaying unprofessional or disruptive behavior may be excluded from the hearing.

The PRB hearing will be divided into unclassified and classified sessions. A security officer will be present for all sessions of the PRB hearing and will ensure that participants do not exceed the appropriate classification level. The unclassified session will include the PR, authorized PC, detainee-client and witnesses. The classified session will include the PR, authorized PC with an appropriate security clearance and, if approved in advance by the PRB, select witnesses who need to provide classified information. In the event the PR needs to comment on information that was not provided to the authorized PC, a separate classified session may be convened for that purpose.

Classified sessions are closed proceedings and are open only to those personnel with appropriate clearances and a need to know the information being discussed. Presentation and discussion of classified information will be limited to the classified session.

Detainee-clients will only participate in unclassified sessions.

Witnesses will be called during unclassified sessions unless, pursuant to a timely request, the PRB determines in its discretion and by consensus, that a witness with the appropriate security clearance is required to testify and discuss classified information during the classified session.

The authorized PC is to exercise care and caution to protect classified information and strictly adhere to applicable security instructions and requirements when questioning the detainee-client or witnesses during the unclassified session.

Any participant in the PRB hearing may request from the PRB members an immediate recess during the unclassified session in the event any individual knows, believes, suspects or is unsure if classified information is being presented or discussed during the unclassified session.

10

UNCLASSIFIED

UNCLASSIFIED

Version 22 Jul 2013

The role of the PR and authorized PC during the hearing is to advocate on behalf of the detainee-client, challenge the information presented to the PRB and introduce relevant information on behalf of the detainee-client.  This can be done through an opening and closing statement, commenting on the information presented, direct questioning of the detainee-client and witnesses, and responding to questions from the PRB members.  The PR and authorized PC will determine how to divide these responsibilities.

Witnesses will first be questioned by the detainee-client and/or his representatives and will then remain available for any questions by PRB members.

The detainee-client may make a statement to the PRB.

PRB members may pose questions to the detainee-client during the hearing and the detainee-client may answer; however, the detainee-client is not obligated to respond.

During the hearing, PRB members may ask questions of and request additional information from the detainee-client, his PR and authorized PC, as needed to reach a decision.

If, during the PRB hearing, the PRB asks a question of or requests additional information from the detainee-client, PR and/or authorized PC, and such question cannot be answered during the hearing, the PRB will, by consensus, decide whether the outstanding information is desired to reach a decision.  If the information is required, the response will be due within 21 calendar days of the hearing.  If the PRB determines by consensus that a response to the request is not required prior to making a determination, the detainee-client may submit his response for consideration at the next full or file review.

If, after the hearing, the PRB determines by consensus that they require additional information after the hearing, the PRB will provide those requests for information to the Case Administrator for immediate action.

Responses from the detainee-client, PR and/or authorized PC shall be provided to the Case Administrator no more than 21 calendar days after the question was asked or the request was made.  In the event that a response cannot be provided within 21 calendar days, any response that comes in will be included in the next file review for the detainee-client, unless the PRB determines by consensus that an extension will be granted.

In the event additional information is provided to the PRB by the Government after the hearing, that information will be provided to the PR and authorized PC in accordance with the screening requirements under EO 13567 and DTM 12-005.

Responses to PRB questions or requests for information which are provided after adjourning of the hearing shall be submitted to the PRB for consideration without reconvening the PRB or reopening the PRB hearing unless the PRB directs otherwise.  Responses and comments which are not provided in a timely manner will be considered at the discretion of the PRB and included in the material considered for next periodic review, if any.

11

UNCLASSIFIED

Version 22 Jul 2013

### 13. Miscellaneous and Post-Hearing

No post-hearing submissions will be accepted with the exception of those responses contemplated in these procedures or as directed by the PRB.

The Case Administrator shall provide the summary of the final determination to the PR. The PR will notify the authorized PC of the final decision and provide copies of both the English and translated versions of the summary of the final determination to the authorized PC.  The PR will schedule a meeting with the detainee-client and the authorized PC to notify the detainee-client of the PRB decision.

### 14. Use of WikiLeaks Materials

The Government is aware that purported detainee-client assessments and purported U.S. State Department cables posted on the WikiLeaks website contain material that some PC may want to utilize in the detainee-client submission.  Although the U.S. Government has confirmed that purported detainee-client assessments were leaked to WikiLeaks, it has neither confirmed nor denied that individual reports are official government documents.  The U.S. Government has not commented at all on the authenticity of the purported cables posted by WikiLeaks, and this guidance is not a confirmation or denial of such authenticity.  The purported detainee-client assessments and purported State Department cables posted on the WikiLeaks website, or on other sites, should be treated as potentially classified information.  This guidance is intended to allow PC to make responsible use of the "potentially classified information" accessible on the WikiLeaks website.  For purposes of this guidance, the phrase "potentially classified information" includes any material that:  (1) is marked as or otherwise indicated to be classified; (2) is publicly available; and (3) the U.S. Government has neither confirmed nor denied is a copy of an official government document.

PC are permitted to view on any non-U.S.-Government-issued computer, including personal and work computers, potentially classified information on the WikiLeaks website, or on other websites that reproduce such material found on the WikiLeaks website.  While PCs may access such material from a non-U.S.-Government-issued personal or work computer, PCs are not permitted to download, save, print, disseminate, or otherwise reproduce, maintain, or transport potentially classified information.

The purported detainee-client assessments and cables posted on the WikiLeaks website will be made available at the PRS Secure Facility.  In making these materials available, the U.S. Government is neither confirming nor denying that any individual detainee-client assessment or purported cable posted on the WikiLeaks website or any other website is an official government report.

PC are permitted to use information from the purported detainee-client assessments and cables in the detainee-client submission to the same extent that PC are permitted to use classified information, subject to the same security procedures and restrictions provided under the MOU. In any written submission in which PC refer to such information, PC must identify the source as potentially classified information found on the WikiLeaks website or another website, to make

12

**UNCLASSIFIED**

Version 22 Jul 2013

clear that the PC is citing to such material and not an official government report.  Such submissions must be treated as potentially classified and handled in accordance with the security procedures and restrictions stipulated in the MOU.

The restrictions discussed above that apply to potentially classified information posted on the WikiLeaks website or other websites do not apply to secondary reporting such as news articles, blogs, transcripts of broadcasts, and the like.  PC may download, print, copy, or otherwise access, maintain, disseminate, and transport secondary reporting that discusses or refers to potentially classified information.  In the event secondary reporting includes substantive reproduction of significant portions of potentially classified information, such secondary reporting should be treated in accordance with the guidelines for the actual potentially classified information.

The MOU provides instruction relevant to public and private statements by counsel concerning potentially classified information posted on the WikiLeaks website or other websites.  Section 8i. of the MOU states that in the event that classified or presumptively classified information enters the public domain, PC are not precluded from making private or public statements about the information already in the public domain, but only to the extent that the information is in fact in the public domain.  PC may not make any public or private statements revealing personal knowledge from non-public sources regarding the classified or presumptively classified status of the information or disclosing that PCs had personal access to classified information or controlled unclassified information (CUI) confirming, contradicting, or otherwise relating to the information already in the public domain.  The same provisions apply to discussion of potentially classified information posted on the WikiLeaks website or other websites, and to discussion of secondary reporting about such material with a detainee-client.

13

**UNCLASSIFIED**